**Donald V. DUMONT,
Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.**

No. 74–2903.

United States Court of Appeals,
Fifth Circuit.

May 30, 1975.

Donald L. Kraemer, Staff Counsel for Inmates, Stanley G. Schneider, James H. Randals, Huntsville, Tex., for petitioner-appellant.

John L. Hill, Atty. Gen., Ben M. Harrison, Gilbert Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before GIBSON *, THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

Donald V. Dumont was convicted by a Texas jury in 1965. The offense: possession of heroin; the punishment: life in the Texas Department of Corrections. The judgment was affirmed on direct appeal, Dumont v. State, Tex.Cr.App. 1965, 398 S.W.2d 129.

Dumont, who has exhausted available state remedies, appeals the district court's denial of habeas corpus following an evidentiary hearing. On the merits,

Dumont levels a due process attack against Texas' former statutory procedure for selecting grand jury commissioners and grand jurors as that procedure was applied in the selection of the grand jury which indicted him in Harris County on December 18, 1964.[1] Specifically, Dumont contends and sought to prove that the "freeholder" requirement for service on the grand jury commission, together with the "freeholder or householder" requirement for service on the grand jury, operated to deny him an indictment by a fair cross-section of the community. For a fuller explication of the proceedings below, see the opinion of the district court, S.D.Tex.1974, 377 F.Supp. 374, which held that Dumont's statistical evidence did not make a prima facie case of unconstitutional exclusion of cognizable segments in the community. We affirm, but we do so for different reasons which fall short of the merits. In sum, we hold that the district court erred in failing to sustain the state's contention of procedural waiver as to the collateral challenge to the grand jury.

■ Dumont was brought to trial in March 1965, represented by employed counsel. His plea was not guilty. Texas law then (Vernon's Ann.C.C.P. of 1925, art. 358) and now (Vernon's Ann.C.C.P. of 1965, art. 19.27) provides:

. Before the grand jury has been impaneled, any person may challenge the

---

* Of the Eighth Circuit, sitting by designation.

1. The grand jury which indicted Dumont was chosen by a two-step process. Under former V.A.C.C.P. art. 333 (1925) (now art. 19.01, as amended, V.A.C.C.P. of 1965), the district judge appointed not less than three nor more than five persons to act as jury commissioners. One of the qualifications required that they be "qualified jurors and freeholders in the county."

Once selected, the grand jury commissioners in turn chose sixteen grand jurors. In order to serve on the grand jury, one had to be "a freeholder within the state, or a householder within the county." V.A.C.C.P. art. 339 (1925) (now art. 19.08, as amended, V.A.C.C.P. of 1965). See also V.A.C.C.P. art. 338 (1925) (now art. 19.06, as amended, V.A.C.C.P. of 1965). A related description of this scheme is

contained in Brooks v. Beto, 5th Cir. 1966, 366 F.2d 1, 4–5, cert. denied, 386 U.S. 975, 87 S.Ct. 1169, 18 L.Ed.2d 135 (1967).

Since Dumont's indictment, the Texas Legislature has substantially revised the grand jury statutes. In 1965, article 339 was amended and reenacted as article 19.08 to include wives of householders. In 1969, the freeholder-householder qualification was deleted entirely as to grand jurors. The freeholder qualification for grand jury commissioners, article 19.01, was dropped in 1971. See V.A.C.C.P. of 1965 (1974–75 Supp. at 327, 330). In 1965, article 19.06 was written to enlarge the grand jury from sixteen to twenty members. The present article 19.06, as amended in 1967, directs the commissioners to select not less than fifteen nor more than twenty citizens of the county to serve as grand jurors. V.A.C.C.P. of 1965 (1974–75 Supp. at 328).

array of jurors or any person presented as a grand juror. In no other way shall objections to the qualifications and legality of the grand jury be heard. Any person confined in jail in the county shall upon his request be brought into court to make such challenge.

The Court of Criminal Appeals has consistently construed this article to mean that a defendant who would challenge the composition of the grand jury, for any reason, must do so at his earliest opportunity. *See, e. g.,* Valadez v. State, Tex.Crim.App.1966, 408 S.W.2d 109; Armentrout v. State, 1940, 138 Tex.Cr.R. 238, 135 S.W.2d 479. Although the accused has both the right and the duty to challenge the grand jury prior to its impanelment, a longstanding line of case law permitted the challenge to be raised by motion to quash the indictment, if the defendant did not neglect a reasonable pre-impanelment opportunity or the offense occurred after the grand jury was impaneled. *See* Ex parte Fertitta, 1959, 167 Tex.Cr.R. 483, 320 S.W.2d 839; Ex parte Covin, 1955, 161 Tex.Cr.R. 320, 277 S.W.2d 109; Turner v. State, 1945, 148 Tex.Cr.R. 491, 187 S.W.2d 991; Conklin v. State, 1942, 144 Tex.Cr.R. 210, 162 S.W.2d 416. The Texas Legislature codified this case law in 1965, subsequent to Dumont's indictment. *See* V.A.C.C.P. art. 27.03, subd. 3. Under Texas practice, the procedures just described constitute the exclusive methods for challenging the makeup of the grand jury. A failure to observe them results in a procedural waiver, which precludes assertion of the point by motion in arrest of judgment or in a motion for new trial. Tyson v. State, 1943, 146 Tex.Cr.R. 128, 171 S.W.2d 496 and cases cited at 498. Similarly, if the challenge has been waived by the accused's failure to follow the prescribed procedures, the Court of Criminal Appeals will not consider the point in an application for state post-conviction relief. Ex parte Covin, *supra.*[2]

In this case, Dumont admittedly waived both of the Texas procedures for pretrial challenge to the composition of the grand jury. We must decide the consequences of that waiver as they affect the availability of federal habeas corpus relief. The State does not argue that Dumont deliberately bypassed an available state procedure. *Cf.* Van Eaton v. Wainwright, 5th Cir. 1975, 508 F.2d 849; Aaron v. Capps, 5th Cir. 1975, 507 F.2d 685. Thus, our inquiry does not proceed along lines suggested in Fay v. Noia, 372 U.S. 391, at 439, 83 S.Ct. 822, at 849, 9 L.Ed.2d 837 (1963). Instead, we must analyze this appeal in light of the cases which deal with waivers resulting from the absence of timely complaint about the composition of grand and petit juries. Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973); Michel v. Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); Rivera v. Wainwright, 5th Cir. 1974, 488 F.2d 275; Morris v. Sullivan, 5th Cir. 1974, 497 F.2d 544; Wilson v. Estelle, 5th Cir. 1974, 504 F.2d 562; Newman v. Henderson, 5th Cir. 1974, 496 F.2d 896; Jones v. Henderson, 5th Cir. 1974, 494 F.2d 47; Marlin v. Florida, 5th Cir. 1974, 489 F.2d 702.

Our analysis begins with a rule of federal constitutional law:

It is beyond question that under the Due Process Clause of the Fourteenth Amendment Louisiana may attach reasonable time limitations to the assertion of federal constitutional rights. More particularly, the State may require prompt assertion of the right to challenge discriminatory practices in the make-up of a grand jury. [350 U.S. at 97, 76 S.Ct. at 162, 100 L.Ed. at 91]. "No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases ' by failure to make timely assertion of the right . . . ." [350 U.S. at 99, 76 S.Ct. at 163, 100 L.Ed. at 92].

Michel v. Louisiana, *supra.* In this case, Dumont makes no due process attack on

---

**2.** The Court of Criminal Appeals denied Dumont's application without written order on December 19, 1972.

the reasonableness of the Texas rules which require pretrial challenges to the composition of the grand jury. *Cf.* Reece v. Georgia, 350 U.S. 85, 76 S.Ct. 167, 100 L.Ed. 77 (1955). Thus, his procedural waiver in the state courts is no less constitutionally a waiver as it comes before us.

■ Under these circumstances, we are guided by Davis v. United States, *supra,* and this Circuit's line of cases, cited *supra,* which have extended *Davis* on a state-by-state basis. In *Davis* the Supreme Court held that a prisoner's failure to raise a grand jury complaint by pretrial objection to the indictment bars collateral review of the alleged defect, unless for "cause shown" the court grants relief from the waiver. Although *Davis* was a 28 U.S.C. § 2255 case which narrowly involved only a construction of F.R.Crim.P. 12(b)(2), "[t]his Circuit has already rejected the attempt to limit *Davis* to its precise facts." Newman v. Henderson, *supra,* 496 F.2d at 898. Since the policy considerations which propelled the result in *Davis*—i. e., to force early complaint about defects in the institution of prosecutions in order to prevent waste of courts', parties', and witnesses' resources—are common to both federal and state prosecutions, we have held *Davis* applicable in a series of state prisoners' habeas challenges to jury composition, if the state has a procedural rule substantially identical to F.R. Crim.P. 12(b)(2). That is not to say that our extension of *Davis* is or will be limited to grand and petit jury attacks. It is clear, however, that *Davis* and its legitimate progeny constitute an exception to the general rule, *see, e. g.,* Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), that all constitutional claims may be raised in a federal collateral petition, unless intentionally and understandingly waived. *Cf.* Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973).

■ Yet the *Davis* "waiver-by-failure-to-object" bar is not without its own exception. We implied earlier that it is not beyond conceivability that a prisoner might somehow show the procedural rule to be unconstitutional as applied by the state in his case. *Cf.* Rivera v. Wainwright, *supra,* 488 F.2d at 277. Even more to the point, *Davis* held that the habeas corpus court may grant relief from the waiver upon a showing amounting to "cause," which presumably may or may not involve constitutional overtones.[3] Our cases interpreting *Davis* have firmly established, nonetheless, that the requirement of "cause" must be satisfied by a strong showing of *actual prejudice.* Newman v. Henderson, *supra,* 496 F.2d at 898. Still, this requirement reflects greater leniency to the prisoner than would be afforded if the Texas rule were given unimpeded effect. The Texas law makes no allowance for "cause" excusing the waiver. As in the case of the Louisiana rule discussed in *Newman,* the "cause" exception has been engrafted onto the rule by this court pursuant to our responsibility under Fay v. Noia, *supra. See also* Wilson v. Estelle, *supra.*

Here, Dumont neither alleges nor shows any specific cause for his failure to comply with the Texas law. He does not contend, for example, that his retained counsel was ineffective. Nor does he assert that state officials denied him an opportunity to exercise his right to challenge the grand jury under the state rule. Dumont's sole argument against foreclosure by waiver is that in 1964, at the time of indictment, neither he nor his attorney was aware of any constitutional case law which might arguably have provided a basis for an attack on the "freeholder-householder" qualification. Dumont alleges that it was not until 1972, when he was reading law books in the prison library, that he realized he might have a case based on exclusion of poor people, women, and young people.[4]

---

3. See the examples indicated in Davis v. United States, *supra,* 411 U.S. at 243–44, 93 S.Ct. at 1583, 36 L.Ed.2d at 225.

4. Dumont's "realization" sprang from a reading of this court's opinion on Petition for Rehearing in Rodriguez v. Brown, 5th Cir.

Noting that the grounds of Dumont's attack appeared to present a case of first impression in the federal courts, the district court relied on Muniz v. Beto, 5th Cir. 1970, 434 F.2d 697, to reject the State's waiver contention. Since it appeared unlikely that Dumont or his trial counsel had tactically elected not to challenge the grand jury as required by Texas law, the court held *Davis* inapplicable. The district court also suggested that "[a] lack of knowledge of the right because it had not yet been declared a right would seem to be 'good cause'." 377 F.Supp. at 382.

 Despite whatever appeal the district court's reasoning might contain in the abstract, we are not writing on a clean slate. Unfortunately, the district court did not then have the benefit of a number of our post-*Davis* decisions. Those decisions have settled at least two crucial points. First, though there can be evidentiary overlap, the *Davis* waiver doctrine—unlike the "considered choice" or "deliberate bypass" doctrine—does not turn on tactical considerations. In situations such as this, in which the *Davis* waiver doctrine otherwise applies, the foreclosure is automatic absent a showing of unconstitutionality in the waiver itself or "cause" amounting to actual prejudice.[5] *See* Aaron v. Capps, M.D. Ala.1974 (Appendix to opinion of the Fifth Circuit), aff'd, *supra*, 507 F.2d 685, at pp. 687–688; Newman v. Henderson, *supra*; Rivera v. Wainwright, *supra*.

Second, we have held that reliance on a particular state of the law at the time of trial does not, by itself, constitute "cause" justifying excuse from the waiver. "Such a reliance reflects a miscalculation of law, not fact." Morris v. Sullivan, *supra*, 497 F.2d at 546. We think this rule must apply equally not only to reliance upon law affecting the *assertion* of purported constitutional rights, as in *Morris*, but also to reliance upon law *defining* constitutional rights. Otherwise, every time an arguably pertinent development in constitutional law offered a prisoner some faint hope of invalidating his conviction, the courts would face the complex task of disentangling excusable lack of clairvoyance from quiet strategic waiver. The answer in each case, turning on subtle degrees, would necessarily be haphazard, and its basis— whatever could be shown of the circumstances surrounding indictment in light of a tenuous and presumptuous appraisal of the law at the time—inherently unsatisfactory. The courts would be revisited by the same kinds of evils that our decisions under *Davis* have sought to remedy by removing these waivers from the tactical matrix. In consequence, we hold that the mere unencouraging status of the law at the time of trial is not *of itself* "cause" under *Davis* as to give rise to actual prejudice warranting relief from the waiver.

 No other cognizable "cause" having been demonstrated, it thus fell in-

---

1971, 437 F.2d 34, prior panel opinion, 429 F.2d 269, withdrawn. There the issue was whether a class action attack seeking to enjoin the Texas freeholder-householder qualifications, filed pursuant to 42 U.S.C. § 1981, was so insubstantial as to warrant a single district judge's dismissal of the complaint. Since the district court had not had the benefit of the Supreme Court's intervening decisions in Kramer v. Union Free School Dist., 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969), and Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), we reversed and remanded to give the district court an opportunity to consider those cases. Inasmuch as neither *Kramer* nor *Turner* involved the grand jury, and in view of our then-authoritative doctrine as to the convening of three-judge courts, *see* Jackson v. Choate, 5th Cir. 1968, 404 F.2d

910 (Brown, C. J.), Dumont was not justified in reading *Rodriguez II* as intimating any view whatsoever on the merits. Interestingly, no subsequent proceedings in the *Rodriguez* litigation are reported.

5. [T]he Court's holding today bars prisoners from raising meritorious claims not raised before trial. A prisoner like Davis could not contend after today's decision, for example, that federal jury commissioners had simply refused to place the names of Negroes in the jury box used in 1968. That, of course, would have been unconstitutional.

Davis v. United States, *supra*, 411 U.S. at 246, 93 S.Ct. at 1584–85, 36 L.Ed.2d at 227 (Marshall, J., dissenting). *But see* Judge Dyer's opinion in Newman v. Henderson, *supra*, 496 F.2d at 898–99.

cumbent upon Dumont to show gross irregularity or manifest unfairness in the grand jury proceedings which resulted in his indictment. The district court specifically found that Dumont had shown no *actual* prejudice in the return of the indictment by a grand jury composed of freeholders and householders. 377 F.Supp. at 383–85. The court also found that any prejudice was necessarily cured as the result of conviction by a fairly-drawn petit jury. *Id.* Dumont does not challenge those findings, but relies instead on the presumption of prejudice enunciated in Peters v. Kiff, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). This reliance is misplaced. As we explained in Newman v. Henderson, *supra,* the Supreme Court's decision in *Davis* holds that *actual prejudice* must be shown in order to excuse a statutory waiver resulting from a failure to assert the complaint in timely fashion. See the discussion in 496 F.2d, at 898–99. In conclusion, no judicially acceptable "cause" for relief has been shown.

█ Our holding does not create a conflict with Muniz v. Beto, *supra,* which the district court found persuasive. *Muniz* involved more than a question of first impression in the federal courts. It involved, instead, a habeas petitioner's belated assertion of a constitutional claim which the Supreme Court had expressly and definitely recognized in an intervening decision rendered pursuant to the Court's certiorari jurisdiction.[6] Also, *Muniz* was decided prior to *Davis* and our decisions interpreting *Davis.* Accordingly, this court cast its discussion in terms of whether Muniz could have known, prior to *Hernandez,* that Texas would consider his undisputable challenges to jury composition. Since, until *Hernandez,* Texas had repeatedly refused to recognize the systematic exclusion of Mexican-Americans, we held that a procedurally proper objection prior or to trial in 1942 would have been an exercise in futility. Consequently, Muniz' waiver did not meet the constitutional test of " 'an intentional relinquishment or abandonment of a *known* right or privilege.' " 434 F.2d at 704, 705 (emphasis in original).

Our construction of *Davis* and subsequent decisions of this court necessarily injects additional considerations into the analysis. We hold that the mere unencouraging status of the law at the time of trial is not *of itself* "cause" sufficient to excuse an otherwise lawful and final state procedural waiver, and thereby warrant the federal court in entertaining a collateral petition. This holding, however, need not collide with the teaching of *Muniz* that one cannot, for purposes of tactical bypass, knowingly and intelligently waive a constitutional right prior to the time it is declared to exist. As we have already stated, the *Davis* procedural hurdle, when otherwise properly in the case, must be surmounted independently of traditional "knowing and intelligent" waiver. We need not decide here whether success past the latter might in some case also scale the former, for neither the Supreme Court nor this court nor any court to our knowledge has declared a right in Dumont's favor upon the particular challenge he asserts.[7] On other occasions a favorable change in the law subsequent to final conviction has been held to justify collateral attack. *See, e. g.,* Davis v. United States, 417 U.S. 333, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); Note, 88 Harv.L.Rev. 213 (1974). Nevertheless, such a change cannot be said to have occurred where, as here, the collateral challenge under consideration would seek to establish the vindicating doctrine. Therefore, this appeal does not

---

**6.** Hernandez v. Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954).

**7.** The Texas grand jury system has frequently been challenged, usually on ethnic grounds. Upsetting of convictions has occurred on a case-by-case basis; the system has never been held inherently unfair. See the cases collected by the district court, 377 F.Supp. at 376. Although the grounds urged by Dumont are new to us, they have been rejected in Texas subsequent to his conviction. Aguero v. State, Tex. Cr.App.1972, 476 S.W.2d 672; Scott v. State, Tex.Cr.App.1971, 474 S.W.2d 226; Terry v. State, Tex.Cr.App.1970, 451 S.W.2d 479.

present an appropriate context for determining the circumstances, if any, under which the supervening declaration of a right not previously known to exist might warrant relief from a *Davis* procedural waiver, as well as preclude, under *Muniz*, a finding of a knowing, voluntary tactical waiver.[8]

For the foregoing reasons, the judgment denying habeas corpus relief is

Affirmed.

---

**8.** The determination, it seems, would involve a careful identification and balancing of the factors comprising the respective parties' interests. From the petitioner's standpoint the inescapably predominant factor is the traditional policy of collateral attack as a means to relieve an "*unjust* incarceration." Schneckloth v. Bustamonte, 412 U.S. 218, 256–58, 93 S.Ct. 2041, 2062–63, 36 L.Ed.2d 854, 879 (1973) (Powell, J., concurring) (emphasis in original). From the government's perspective that factor contemplates evaluation of the strength of the evidence against petitioner before the grand jury and at trial, *cf.* Davis v. United States, *supra,* 411 U.S. at 243, 93 S.Ct. at 1583, 36 L.Ed.2d at 225. Other relevant factors include the length of petitioner's delay in raising the objection, the reasons for the delay, and the clarity, breadth, and retroactivity of the intervening ameliatory change in the law. *Compare* Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), *with* Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975). *See* Johnson v. Henderson, 5th Cir. 1975, 509 F.2d 121. *See also* Muniz v. Beto, *supra,* 434 F.2d at 714–17 (Gewin, J., concurring in part and dissenting in part).