Carl Everett ARNOLD et al.,
Petitioners-Appellants,

v.

Louie L. WAINWRIGHT, Director,
Division of Corrections,
Respondent-Appellee.

No. 74–2724.

United States Court of Appeals,
Fifth Circuit.

Aug. 4, 1975.

Rehearing and Rehearing En Banc
Denied Nov. 12, 1975.

---

Bruce S. Rogow, Miami, Fla. (Court appointed), Louis Jepeway, Jr., Miami, Fla., for petitioners-appellants.

Phillip A. Hubbart, Public Defender, Eleventh Judicial Circuit, Bennett H. Brummer, Asst. Public Defender, Miami, Fla., amicus curiae.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., William L. Rogers and Linda C. Hertz, Asst. Attys. Gen., Miami, Fla., for respondent-appellee.

Before WISDOM, SIMPSON and RONEY, Circuit Judges.

SIMPSON, Circuit Judge:

This case is before us on appeal for the second time. The district court initially denied the petitioners' requests for habeas corpus relief without conducting an evidentiary hearing, from which rulings the petitioners took separate appeals. We consolidated the appeals and remanded for a hearing to determine the answers to specific questions. *Wells v. Wainwright*, 5 Cir. 1973, 488 F.2d 522. Before us now are the answers found by the district court at the required hearing, upon which we may decide whether the prior denial of habeas corpus relief was correct.[1] We conclude that it was and affirm.

Each of the four petitioners was tried by jury upon a not guilty plea and convicted of a felony offense in a Dade County, Florida court.[2] Subsequently to their convictions the Florida Supreme Court decided that the jury selection system which had been in operation in Dade County at the time of the petitioners' trials was unconstitutional. *State v. Silva*, Fla.1972, 259 So.2d 153, 158.[3] The Florida court also ruled, however, that relief under its holding would not be available to those who had failed to comply with the provisions of Fla.R.Crim.P. 3.290, which requires that challenges to the jury panel be made prior to the questioning for service of any prospective juror. The rule states:

Rule 3.290 Challenge to Panel

The state or defendant may challenge the panel. A challenge to the panel may be made only on the ground that the prospective jurors were not selected or drawn according to law. Challenges to the panel shall be made and decided before any individual juror is examined, unless otherwise ordered by the court. A challenge to the panel shall be in writing and shall specify the facts constituting the ground of the challenge. Challenges

1. Our interrogatories and the answers of the district court are attached as an Appendix to this opinion.

2. The offenses and dates of conviction were as follows:
    (i) Arnold—convicted on April 8, 1971, of assault with intent to commit robbery;
    (ii) Wells—convicted on April 30, 1971, of manslaughter;
    (iii) Abrogast—convicted on June 2, 1971, of possession of a stolen motor vehicle and of resisting arrest with violence;
    (iv) Hoffman—convicted on March 1, 1967, of robbery.

3. The constitutional defect in the jury selection system from 1966 through March 1971 was the intentional *inclusion* on each jury panel of a specified percentage of the qualified black citizens of Dade County who were registered voters. Beginning in April 1971, jury selection took account not only of race but also of religion, sex, national origin, and economic status. *State v. Silva*, 259 So.2d at 156, Findings of Fact nos. 2 and 3.

to the panel shall be tried by the court. Upon the trial of a challenge to the panel the witnesses may be examined on oath by the court and may be so examined by either party. If the challenge to the panel is sustained, the court shall discharge the panel. If the challenge is not sustained, the individual jurors shall be called.

Admittedly, the appellants-petitioners, each represented by counsel prior to and during trial, each failed timely to challenge their trial jury panels in compliance with the Florida procedural rule. They seek federal habeas corpus under Title 28, U.S.C., § 2254 to avoid the effect of the Florida Supreme Court *Silva* holding barring relief.

The issue is whether state prisoners alleging that concededly unconstitutional methods were used in the selection of their petit jury arrays may be barred from federal habeas relief because of failure to comply with state procedural law. Our analysis proceeds in two steps. First we must determine whether, applying federal standards, failure to comply with state procedural law constitutes a waiver of the right to challenge the petit jury composition on federal habeas corpus. Second, we must determine whether, in the event waiver is found, appellants are entitled under any theory to be relieved of the preclusive effect of their failure to comply with state law.

■ On the waiver issue, petitioners contend that they cannot be held to have waived their right here to challenge the composition of their respective petit jury panels because there is no showing of deliberate by-pass of available state procedures. *Fay v. Noia,* 1963, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869. The appellee disputes the applicability of the deliberate by-pass standard in the context of this case, asserting that the question of statutory waiver must be decided under the failure to object standard enunciated in *Davis v. United States,* 1973, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216. The choice between the two approaches is no longer an open one in this circuit. In *Rivera v. Wainwright,* 5 Cir. 1974, 488 F.2d 275, we held: (i) that the failure to object standard is to be applied in determining waiver vel non under the same Florida procedural rule involved in this case; and (ii) that failure to comply with the provisions of the rule did indeed constitute a waiver for purposes of federal habeas corpus proceedings. We have followed the Rivera approach in a succession of cases.[4] Under our recent decisions appellants have waived their rights to raise the jury selection issue absent some finding of cause to excuse the waiver.[5]

■ The question before us then is whether the appellants are entitled to relief from the preclusive effect of their waiver under any established theory of law. Under the analogous federal rule,[6]

**4.** See, e. g., *Dumont v. Estelle,* 5 Cir. 1975, 513 F.2d 793; *Van Eaton v. Wainwright,* 5 Cir. 1975, 508 F.2d 849; *Wilson v. Estelle,* 5 Cir. 1974, 504 F.2d 562; *Morris v. Sullivan,* 5 Cir. 1974, 497 F.2d 544; *Newman v. Henderson,* 5 Cir. 1974, 497 F.2d 544, *cert. granted sub nom.* Francis v. Henderson, 1975, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99; *Jones v. Henderson,* 5 Cir. 1974, 494 F.2d 47; *Marlin v. Florida,* 5 Cir. 1974, 489 F.2d 702.

**5.** Petitioners assert that the Supreme Court has recently reaffirmed that the deliberate by-pass standard is to be applied when there is an alleged waiver under state law. In *Lefkowitz v. Newsome,* 1975, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196, the Court stated in a footnote:

For even when state procedural grounds are adequate to bar direct review of a conviction in this Court, federal habeas corpus relief is nonetheless available to litigate the defendant's constitutional claims unless there has been a deliberate bypass of the state procedures. Id. at 290 n. 6, 95 S.Ct. at 890 n. 6, 43 L.Ed.2d at 202 n. 6.

We interpret this note as no more than a restatement of the general principle that a deliberate by-pass must be shown in the usual case. We adhere to the holding of *Rivera v. Wainwright,* 5 Cir. 1974, 488 F.2d 275, and the succeeding cases cited, note 4, *supra,* that the failure to object standard is applicable to a state procedural rule providing for a waiver of the right to challenge the jury composition in the absence of a challenge timely made.

**6.** F.R.Crim.P. Rule 12(b)(2) provides:

(2) Defenses and Objections Which Must Be Raised. Defenses and objections based on defects in the institution of the prosecu-

the courts are expressly permitted to excuse failure to make timely challenges to the grand jury array for "cause shown". There is no such relief clause in the Florida statute, however, and Florida courts insist upon compliance with the Rule's timeliness requirements.[7] In these circumstances this court has interpreted its duty under *Fay v. Noia,* supra, as one to provide relief from the waiver in limited circumstances. *Dumont v. Estelle,* 5 Cir. 1975, 513 F.2d 793, at p. 797.

■ Our decisions teach that a petitioner may be relieved of the effect of his waiver where he is able to demonstrate actual prejudice to his rights from the unconstitutional proceedings of

which he complains. See, e. g., *Newman v. Henderson,* 5 Cir. 1974, 497 F.2d 544, *cert. granted sub nom. Francis v. Henderson,* 1975, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99. These appellants do not allege actual prejudice arising from the jury selection system and the district court expressly found on remand that they suffered no prejudice.[8]

What is not clear from our prior holdings is whether a petitioner may be relieved of the effect of his waiver by virtue of a state procedural rule where he demonstrates "cause" but makes no showing that he was actually prejudiced by the unconstitutional jury selections system.[9] Since we find that the appel-

---

tion or in the indictment or information other than that it fails to show jurisdiction in the court or to *charge an offense may be* raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

7. See, e. g., *State v. Silva,* Fla.1972, 259 So.2d 153; *Jones v. Florida,* Fla.Dist.Ct.App.1973, 276 So.2d 83; *Johnson v. State,* Fla.Dist.Ct. App.1972, 268 So.2d 544, aff'd Fla.1974, 294 So.2d 69; *State v. Bethel,* Fla.Dist.Ct.App. 1972, 268 So.2d 557.

8. The appellants contended at the hearing on remand that a showing of actual prejudice was unnecessary in view of the finding in *Peters v. Kiff,* 1972, 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83, that a defendant is *per se* prejudiced by unconstitutional jury selection methods. As the Supreme Court subsequently noted in *Davis v. United States,* 1973, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216, however:

In denying the relief, the court took into consideration the question of prejudice to petitioner. This approach was approved in *Shotwell* [Shotwell Mfg. Co. v. United States, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357] where the Court stated:

"[W]here, as here, objection to the jury selection has not been timely raised under Rule 12(b)(2), it is entirely proper to take absence of prejudice into account in determining whether a sufficient showing has been made to warrant relief from the effect of that Rule." 371 U.S., at 363, 83 S.Ct., at 461.

Petitioner seeks to avoid this aspect of *Shotwell* by asserting that there both lower courts had found that petitioners were not prejudiced in any way by the alleged illegalities whereas under *Peters v. Kiff,* 407 U.S. 493 [92 S.Ct. 2163, 33 L.Ed.2d 83] (1972), prejudice is presumed in cases where there is an allegation of racial discrimination in grand jury composition. But *Peters* dealt with whether or not a white man had a substantive constitutional right to set aside his conviction upon proof that Negroes had been systematically excluded from the state grand and petit juries which indicted and tried him. Three Justices dissented from the Court's upholding of such a substantive right on the ground that no prejudice had *been shown, and three concurred separately* in the judgment. But the three opinions delivered in *Peters, supra,* all indicate a focus on the existence of the constitutional right, rather than its possible loss through delay in asserting it. The presumption of prejudice which supports the existence of the right is not inconsistent with a holding that actual prejudice must be shown in order to obtain relief from a statutorily provided waiver for failure to assert it in a timely manner.

*Id.* at 244–45, 93 S.Ct. at 1584, 36 L.Ed.2d at 225–226.

9. Our rulings indicate that at the very least the question of prejudice is to be given consideration. In *Newman v. Henderson,* 5 Cir. 1974, 496 F.2d 896, *cert. granted sub nom. Francis v. Henderson,* 1975, 421 U.S. 946, 95 S.Ct. 1674, 44 L.Ed.2d 99, we held that a showing of actual prejudice was the sine qua non of relief from waiver under a state procedural rule. In *Dumont v. Estelle,* 5 Cir. 1975, 513 F.2d 793, however, we indicated that unconstitutionality in the waiver itself might be sufficient excuse, even absent a showing of actual prejudice. *Id.* at 798. Finally, several decisions have spoken in terms of "cause" to excuse the waiver with-

lants have failed to demonstrate cause to excuse their waiver under the state rule, we do not reach that question.

The appellants address the cause shown issue in terms of the question, which we directed to the district court on remand, of whether their trial attorneys could have uncovered the fact of unconstitutional jury selection in a timely fashion through the exercise of reasonable diligence. The district court found that the attorneys had failed to exercise reasonable diligence inasmuch as the information, available upon request, was undiscovered for want of inquiry.

Appellants contend that the cause issue must be viewed with reference to the fact that the jury selection system in operation in Dade County consistently produced apparently racially representative arrays. Attorneys, judges, and other responsible court officials had no reason against this backdrop to suspect the existence of the defect in the selection system. It was in fact only by accident that the peculiar unconstitutionality condemned in *State v. Silva,* supra, was uncovered at all.[10] Because the discriminatory selection system had no readily apparent effect, appellants contend that their cases are factually distinguishable from earlier waiver cases where cause was not found to have been demonstrated, but where the fact of discrimination was characterized as "notorious", e. g., *Shotwell Mfg. Co. v. United States,* 1963, 371 U.S. 341, 363, 83 S.Ct. 448, 461, 9 L.Ed.2d 357, 372. On this basis they urge that we find cause here.

Appellants assert also that their attorneys, in failing to challenge the jury selection system, performed in accord with the norm for criminal defense attorneys in Dade County when they were tried because no one had thought to challenge the system during the six years of its

operation. They rely in this connection upon language in *Tollett v. Henderson,* 1973, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235:

> We hold that after a criminal defendant pleads guilty, on the advice of counsel, he is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected. The focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity. A state prisoner must, of course, prove that some constitutional infirmity occurred in the proceedings. But the inquiry does not end at that point, as the Court of Appeals apparently thought. If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not "within the range of competence demanded of attorneys in criminal cases," *McMann v. Richardson, supra* [397 U.S. 759] at 771 [90 S.Ct. 1441 at 1449, 25 L.Ed.2d 763]. Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof. Thus, while claims of prior constitutional deprivation may play a part in evaluating the advice rendered by counsel, they are not themselves independent grounds for federal collateral relief.

*Id.* at 266–67, 93 S.Ct. at 1607–08, 36 L.Ed.2d at 243. The argument proceeds that an attorney meeting the "range of competence" standard of *Tollett* cannot have failed to exercise reasonable diligence. With their attorneys measuring up to the standards of other criminal defense attorneys practicing in Dade

out mentioning the actual prejudice requirement. See, e. g., *Van Eaton v. Wainwright,* 5 Cir. 1975, 508 F.2d 849; *Wilson v. Estelle,* 5 Cir. 1974, 504 F.2d 562; *Morris v. Sullivan,* 5 Cir. 1974, 497 F.2d 544.

10. The moment of discovery arrived when the defense attorney in *Silva* was deposing one of

the Dade County jury commissioners in an effort to mount a challenge to the exclusion of recently enfranchised 18 to 20 year olds from jury service. Discovery of the proportional representation of Blacks was entirely accidental.

County, Florida, their advice fell within the required "range of competence". Hence, it is said, the district court finding of failure by counsel to exercise reasonable diligence is incorrect.

■■■ Both segments of the appellants' argument are flawed. First, whether the fact of discrimination is "notorious" is but one aspect of the inquiry that must be made to determine whether a reasonably diligent attorney could have discovered the fact of unconstitutional jury selection. A more significant additional inquiry is: what effort was necessary to obtain the information required as a basis for timely challenge to the petit jury array? The district court found in this case:

The procedures that were in effect in Florida have been in effect for a considerable period of time prior to these trials, although they were not known by counsel for the petitioners nor by the petitioners.

The Court further finds that those procedures were not notorious, but were in fact open and could have been discovered by the exercise of reasonable diligence.

The ready availability of the information concerning the jury selection system outweighs, in our judgment, the fact that the composition of the jury panels themselves furnished no hint of unconstitutionality in the panel selection process.[11] Our holding then is that the fact that the unconstitutionality of the jury selec-

11. Our conclusion is indirectly supported by decisions under Rule 12(b)(2), F.R.Crim.P. For example, compare language from the district court opinion cited by the Supreme Court in *Davis v. United States,* 1973, 411 U.S. 233, 243, 93 S.Ct. 1577, 1583, 36 L.Ed.2d 216, 225

The waiver provision of the Rule therefore coming into play, the District Court held that there had been no "cause shown" which would justify relief. It said:

"Petitioner offers no plausible explanation of his failure to timely make his objection to the composition of the grand jury. The method of selecting grand jurors then in use was the same system employed by this court for years. No reason has been suggested why petitioner or his attorney could not have ascertained all of the facts necessary to present the objection to the court prior to trial."

with the above quoted district court's findings in the instant case. We note also that in *Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357, the characterization of the infirmities in the jury selection process as "notorious" was but one factor relied on by the Court in deciding that there had been waiver under Rule 12(b)(2). The Court in *Shotwell* said:

In the circumstances of this case, petitioners' contentions are without foundation. In denying the motions the District Court found that the facts concerning the selection of the grand and petit juries were notorious and available to petitioners in the exercise of due diligence before the trial. The same method of selecting jurors in the district had been followed by the clerk and the jury commissioner for years. Inquiry as to the system employed could have been made at any time. Indeed, the acceptance of volunteers for the juries had received publicity in the newspa-

pers, and their presence on the petit jury could have been ascertained at the time it was constituted.

*Id.* at 363, 83 S.Ct. at 461, 9 L.Ed.2d at 372–73. We are unconvinced that notoriety was the crucial factor in the Court's waiver-holding in *Shotwell.*

We observe finally that in *Scales v. United States,* 1961, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782, the Court affirmed a finding of waiver under Rule 12(b)(2) predicated on the fact that "The information on which the motion (challenging the grand jury composition) was based was at all times available to the defendant and yet he failed to take action despite liberal extensions of time". *Id.* at 259, 81 S.Ct. at 1501, 6 L.Ed.2d at 818. (Although the quoted portion is from the appellate court opinion, *Scales v. United States,* 4 Cir. 1958, 260 F.2d 21 at 46, the Supreme Court relied on the reasons assigned by the Fourth Circuit). All these cases emphasize that the availability of the information is a key factor.

Our state habeas decisions indicate that the relevant inquiry in determining cause should be whether the information necessary to mount a jury challenge was available, as a practical matter. See *Dumont v. Estelle,* 5 Cir. 1975, 513 F.2d 793 and cases cited therein. There we indicated that concealment of the relevant information behind state-erected barriers might rise to the level of cause excusing a waiver. See also *United States ex rel. Seals v. Wiman,* 5 Cir. 1962, 304 F.2d 53, 69, cert. denied 372 U.S. 924, 83 S.Ct. 741, 9 L.Ed.2d 729, where, in granting relief from Alabama's court-fashioned waiver provision, we noted that the evidence indicating unconstitutional jury selection "was not 'easily ascertainable,' but has been produced . . . only as the result of unusual and exhaustive investigation by Seals' present counsel".

tion system was not "notorious" does not amount to "cause" excusing failure to comply with the state procedural rule.

Nor does the claimed fact that petitioners' attorneys acted within "the range of competence" of criminal defense attorneys in Dade County excuse their failure to make a timely challenge to the composition of the jury panel. It is conjectural whether that range of competence included exercise of reasonable diligence to determine whether the method of selecting petit jury panels was constitutionally sound.[12] Certainly it does not follow without more that an attorney who fails to exercise reasonable diligence with regard to jury challenges is *a priori* ineffective. *MacKenna v. Ellis,* 280 F.2d 592, 599, cert. denied 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78. We decline to find a lack of effective assistance of counsel arising from the bare fact of failure to challenge the array of petit jurors.

In sum, we affirm the district court finding that appellants' attorneys failed to exercise reasonable diligence when they did not make the inquiry needed to reveal the use of unconstitutional jury selection methods at a time when proper objections in compliance with Fla.R. Crim.P. 3.290 to the jury array could

have been timely asserted. This conclusion is reinforced by consideration of the ensuing disarray consequent to adoption of appellants' position. State procedural rules requiring timely jury challenges give reasonable assurance that trial proceedings, once initiated, will not be subject to post-conviction invalidation on grounds which were discoverable before trial in the exercise of reasonable diligence. Such rules provide for economy of judicial effort. They also serve the useful purpose of forestalling a criminal defendant's deliberate failure to pursue reasonably complete inquiries designed to disclose such infirmities during initial trial stages, and instead waiting until after an adverse verdict has been rendered,—resulting in giving the defendant two bites at the apple.[13]

A holding by us that the state procedural rules are binding only where the evidence of unconstitutional jury selection methods is "notorious" or where the norm in the legal community is not to make timely jury challenges would destroy incentive to comply with the rule's provisions. Approval of such a do nothing approach would constitute a step backward in the administration of criminal justice and unnecessarily delay desirable finalty in disposition of criminal convictions.

---

12. Cf. *The T. J. Hooper,* 2 Cir. 1932, 60 F.2d 737, cert. denied 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571, where, in discussing the effect of industry custom on the determination of whether seagoing tugs without radio receiving sets for monitoring weather reports were seaworthy or not, Judge Learned Hand concluded for the court:

> There are, no doubt, cases where courts seem to make the general practice of the calling the standard of proper diligence; we have indeed given some currency to the notion ourselves. Indeed in most cases reasonable prudence is in fact common prudence; but strictly it is never its measure; a whole calling may have unduly lagged in the adoption of new and available devices. It never may set its own tests; however persuasive be its usages. Courts must in the end say what is required; there are precautions so imperative that even their universal disregard will not excuse their omission.
>
> *Id.* at 740 (citations omitted).

True enough, in *The T. J. Hooper* no custom at all was found, some tugs having utilized radio

receivers and others not having done so. But, in our own case, inquiry into jury selection procedures was not unknown; it was merely uncommon. It does not follow that failure to inquire was therefore reasonable.

13. Cf. *Brown v. Allen,* 1953, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469, where the Court noted:

> Evidence in state criminal proceedings to support objections on federal constitutional grounds, known to state defendants and their counsel, or easily ascertainable, cannot be withheld or neglected at the state trial and used later to support habeas corpus. State criminal proceedings would be unreasonably hampered. *Ex parte Spencer,* 228 U.S. 652, 660 [33 S.Ct. 709, 711, 57 L.Ed. 1010]; *In re Wood,* 140 U.S. 278, 285 [11 S.Ct. 738, 741, 35 L.Ed. 505]; *Crowe v. United States,* 4 Cir., 175 F.2d 799; *Price v. Johnston,* 334 U.S. 266, 289 [68 S.Ct. 1049, 1061, 92 L.Ed. 1356], and the dissent.
>
> *Id.* at 480 n. 24, 73 S.Ct. at 419, 97 L.Ed. at 501.

■ In Florida the rule is well established that challenges to the petit jury selection system must be mounted prior to the questioning of any individual juror. Without attempting to hypothesize a set of circumstances sufficient to excuse failure to make a timely jury challenge, we hold here simply that a petitioner whose attorney takes no steps to determine whether there is any basis for such a challenge may not later utilize federal habeas corpus procedure to obtain relief from his waiver under state procedural rules.

The district court order denying the petitions for habeas corpus was correct.

Affirmed.

### APPENDIX

The district court's orally reported findings of fact in answer to our interrogatories propounded in *Wells v. Wainwright,* 5 Cir. 1973, 488 F.2d 522, 523 were as follows:

Was the jury selection procedure followed in his case actually known to petitioner or his counsel prior to the time his trial was commenced? [No.]

Could the petitioner or his attorney have ascertained all of the facts concerning the Dade County jury selection procedure which would have been necessary to formulate and present any meaningful objection they cared to make within the time required by Florida law? [Yes.]

Could these necessary facts relating to this procedure have been discovered before trial by the exercise of reasonable diligence? [Yes.*]

Did petitioner or his counsel give tactical consideration to determining whether to timely raise such an objection or to hold it in reserve? [No.]

Did the case have any overtones involving race or sex? [No.]

What prejudice did the jury selection procedures followed in this case cause to petitioner? [None.]

What effect did the jury procedures which were used have on the integrity of the fact finding procedures in petitioner's case? [None.]

Would the making of a timely objection to the racial or sexual composition of the jury have so prejudiced the community that the likely result of such a challenge would have been that any jury subsequently impanelled would be prejudiced against the defendant? [No.]

■

---

* The district court entered an alternative finding to this question. It ruled that if the petitioners were correct in their allegation that reasonable diligence was to be measured by the "range of competence" of attorneys in the Dade County area, see note 11, *supra,* and accompanying text, then the answer to the question would be "No".