**UNITED STATES of America**

v.

**Michael A. PECK.**

**Crim. No. 2:91CR00048(AHN).**

United States District Court, D. Connecticut.

Oct. 20, 1992.

Andrew Galliard, Asst. U.S. Atty., Bridgeport, CT, for plaintiff.

James Ferraro, New Haven, CT, for defendant.

## RULING ON MOTION FOR A NEW TRIAL AND STAY OF SENTENCING

NEVAS, District Judge.

The defendant, Michael A. Peck ("Peck"), brings this motion for a new trial and/or to stay his sentencing and further proceedings claiming that the method of petit jury selection used in this case violated his right to a representative jury pursuant to Rule 33 of the Federal Rules of Criminal Procedure, the Jury Selection and Service Act, 28 U.S.C. §§ 1861–1869, and, the Fifth and Sixth Amendments of the United States Constitution.

The court notes that Peck has failed to submit a memorandum of law with his motion and thus the court could deny the motion pursuant to Rule 9(a), R.Civ.P. (D.Conn.). The court chooses, however, to address the substance of the motion. For the reasons stated below, the court denies the motion.

### Background

A. Procedural History

On July 30, 1991, Peck was charged in a four-count indictment that was returned by a grand jury sitting in Bridgeport. The first three counts charged him with tax evasion in violation of Title 26, Section 7201, for the calendar years of 1984, 1985, and 1986. The fourth count charged Peck with willful failure to file an income tax return for the 1987 calendar year, a violation of Title 26, Section 7203.

On July 7th, 1992, the court conducted jury selection in Hartford for Peck's trial in the following manner: Prospective jurors were brought into open court and the Deputy Clerk called attendance. The jurors were then sworn and given a card bearing questions which was then circulated amongst the prospective jurors.[1] Each juror answered the questions in the order that they appeared

---

1. The questions on this card are listed as follows: (1) name, (2) juror number, (3) addresses during last 5 years, (4) married or single, (5) your work and spouse's work within last 5 years (name of employer, duties, how long employed), (6) children (ages and how many), (7) experience as party in lawsuit, (8) experience as witness in lawsuit, (9) experience as juror in lawsuit (civil or criminal, ever rendered a verdict), and, (10) hobbies, interests, etc.

A review of the voir dire transcript confirms that these questions were answered during Peck's jury selection.

on the card and in response to questions numbers one and two, each juror stated his or her name and town of residence. After each juror had responded, the voir dire continued. Both parties exercised peremptory challenges as provided by the Federal Rules of Criminal Procedure. Fourteen jurors were selected, including two alternates. The trial began on July 8, 1992 and on July 21, 1992, the jury returned a verdict convicting Peck on all four counts.

### B. The Hartford Jury Wheel

Peck bases this motion on a computer error in the creation of the Hartford Master Jury Wheel ("Jury Wheel") from which the Hartford grand and petit jurors are summoned. Generally, the Jury Wheel is created by using the voter registration lists from the political subdivisions within the Hartford Division of the court. *See United States v. Osorio,* 801 F.Supp. 966, 969–70 (D.Conn. 1992); *United States v. LaChance,* 788 F.2d 856, 862–63 (2d Cir.1986), *cert. denied,* 479 U.S. 883, 107 S.Ct. 271, 93 L.Ed.2d 248 (1986). Grand and petit jurors are selected at random from this pool of names. The nature and impact of the computer error on the Jury Wheel and jury selection process are well summarized in Judge Daly's decision in *United States v. Osorio.* The significant facts for the purpose of Peck's motion are that (1) there was a computer error that resulted in the exclusion from the Jury Wheel of jurors from Hartford and New Britain, (2) the excluded towns represent the highest minority populations in the Division, and, (3) the absence of the towns from the Jury Wheel created a jury pool that failed to represent a fair cross-section of the Division. *See Osorio,* 801 F.Supp. at 979–80.

*Discussion*

### I. Timeliness of Objections

The government does not address the merits of Peck's constitutional and statutory objections to the jury selection process. Rather, the government argues that because Peck failed to raise any objection to the process before his conviction, he has now waived both his constitutional and statutory rights to challenge the jury selection process. While the court is hesitant to state a general rule of waiver of constitutional claims, the court agrees that waiver is appropriate due to the specific circumstances of this case. To this extent, the court agrees with the government's argument.

■ Rule 12(b)(2) provides that certain defenses and objections are waived unless raised before trial; these include the following: "(1) Defenses and objections based on defects in the institution of the prosecution; or (2) [d]efenses and objections based on defects in the indictment or information...." Rule 12(b)(2), Fed.R.Crim.P. Although Rule 12(b)(2) does not expressly apply to petit juries, the rule's requirements were extended to petit juries in *Shotwell Manufac. v. United States,* 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963).[2] In that case, the Court held that "an objection to the petit jury array is not timely if it is first raised after the verdict." *Id.* at 362, 83 S.Ct. at 461.

■ Particularly in the context of constitutional rights, the 12(b)(2) waiver is not unyielding. The application of the Rule to petit juries necessarily includes the Rule's provision that a "court for cause shown may grant relief from the waiver." Rule 12(f), Fed. R.Crim.P. In *Shotwell,* for example, the Court found that the petitioners failed to

---

**2.** *Accord Frazier v. United States,* 335 U.S. 497, 514, 69 S.Ct. 201, 210, 93 L.Ed. 187 (1948) (finding that jury challenge after trial "came too late."); *United States v. Avila,* 1992 WL 75236, 1992 U.S.App. Lexis 7484 (9th Cir.1992) (declining review of Sixth Amendment challenge because first raised on appeal); *United States v. Ballard,* 779 F.2d 287 (5th Cir.1986), *cert. denied,* 475 U.S. 1109, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); *United States v. Vecchiarello,* 536 F.2d 420 (D.C.Cir.1976); *Paige v. United States,* 493 F.2d 22 (2d Cir.1974) (applying 12(b)(2) to petit

juries), *cert. denied,* 417 U.S. 935, 94 S.Ct. 2649, 41 L.Ed.2d 238 (1974). *See also United States v. Biaggi,* 909 F.2d 662, 679 (2d Cir.1990) (stating that challenges to peremptory challenges should be adjudicated during jury selection), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). *Cf. Davis v. United States,* 411 U.S. 233, 238–39, 242, 93 S.Ct. 1577, 1580–81, 36 L.Ed.2d 216 (1973) (holding that the "waiver standard expressed in Rule 12(b)(2) governs an untimely claim of grand jury discrimination, not only during the criminal proceeding, but also later on collateral review.").

show cause that warranted relief from waiver because the facts concerning the method of selecting the petit jury were "notorious and available to petitioners in the exercise of due diligence before the trial." *Id.* at 363, 83 S.Ct. at 461.[3] This determination is not predicated on stringent standards; "[t]he decision to grant or deny relief from the waiver provision of 12(b)(2) is a matter left to the discretion of the district judge." *United States v. Williams,* 544 F.2d 1215, 1217 (4th Cir.1976).

### A. Notice

■ Peck argues that his motion is timely. Peck alleges that he could not have been aware of any problems with the jury pool at the time of jury selection as the infirmity in the creation of the Jury Wheel only could have been known by the Clerk of the Court and those directly involved with the selection process. Therefore, Peck argues, he is entitled to relief from waiver as he could not have raised this objection any earlier.

The government counters that Peck's delay in objecting to the jury pool is unjustified. The government contends that the method of selecting the jury pool and the make-up of the jury panel were readily apparent to Peck and his counsel at the time of jury selection such that they had adequate notice of the problem so as to raise this claim before the trial or verdict.

While the court agrees that Peck had adequate notice at the time of jury selection, the court does not find that presence at the jury selection alone is a sufficient basis to hold a defendant to the Rule 12(b)(2) waiver requirements. Nor does the court adopt the position, suggested by the government, that because Peck could have uncovered the flaws in the system as well as any other defendant, he had adequate notice of the defects and therefore his objection should be waived. Unlike *Shotwell,* in which the Court imputed awareness of the jury selection process to the defendants, here the government asks the court to find that Peck could have been aware of an aberration in the manner in which the array was summoned, not the actual method of jury selection. The court declines. The court does not think it would be fair or realistic to fashion a standard that imputes awareness to defendants of errors in the creation of a jury wheel. Indeed, defendants should be able to rely on the fact that a jury selection system works as it has been designed. Criminal defendants should not bear the burden of systemic breakdowns.

The court finds, however, that because of the specific jury selection procedures followed by the court, Peck did have sufficient notice of potential defects in the jury pool to warrant holding him to the waiver requirements of Rule 12(b)(2). First, because each of the prospective jurors stated in open court the towns in which they resided, Peck was put on notice as to the lack of representation of certain towns in the jury venire. The court acknowledges that the Sixth Amendment requires a fair cross-section in the entire jury pool, and not the jury itself.[4] Yet, while notice of the lack of representation within the jury panel by no means cures any constitutional deficiency within the jury pool, certainly the make-up of the jury venire gave Peck a sufficient basis to be suspect of the jury pool. *Cf. Duren v. Missouri,* 439 U.S. 357, 366, 99 S.Ct. 664, 669–70, 58 L.Ed.2d 579 (1979) (lack of representation in every weekly venire was evidence of Sixth Amendment violation); *Biaggi,* 909 F.2d at 678 (although

---

**3.** The requirements under the Jury Selection Act are analogous: A defendant may move to dismiss his indictment or stay proceedings on the grounds that the government has failed to comply with the provisions of the Act in selecting the petit jury "before the voir dire begins or within seven days after defendant discovered, or could have discovered by the exercise of diligence" any deficiencies within the jury pool. 28 U.S.C. § 1867(a).

**4.** *See, e.g., Taylor v. Louisiana,* 419 U.S. 522, 538, 95 S.Ct. 692, 702, 42 L.Ed.2d 690 (1975) ("jury wheels, pools of names ... must not systematically exclude distinctive groups in the community...."); *Frazier v. United States,* 335 U.S. 497, 508, 69 S.Ct. 201, 207, 93 L.Ed. 187 (1948) ("There is no right to any particular composition or group representation on the jury."); *United States v. Biaggi,* 909 F.2d 662, 678 (2d Cir.1990) ("the Sixth Amendment assures only the opportunity for a representative jury...."), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991).

Sixth Amendment refers to the jury pool, not the venire, the Sixth Amendment right may be implicated where venires regularly lack the proper representation).

Second, Peck's counsel is a privately retained former Department of Justice tax attorney who was well aware of his client's rights. Moreover, Peck himself is an experienced trial lawyer and thus understands his right to a representative jury pool better than most criminal defendants. Furthermore, the imbalance in the Hartford Jury Wheel was publicized in the legal community and in the Hartford area well before Peck's trial.[5]

Although Peck failed to file a supporting memorandum, his motion indicates that *Osorio* supports his claim. However, that case is distinguishable from the present case on two important grounds. First, *Osorio* concerned defects in the grand jury, not the petit jury. Osorio was not present during the voir dire process and therefore could not have been put on notice of the make-up of the grand jury pool. Second, unlike Peck who brings this motion after he has been convicted, Osorio made a timely objection to the process *before* his trial. The District Court in *Osorio* specifically emphasized that "this [is not] a case where the public's interest in enforcing judgments outweighs its interest in broad participation in the administration of justice." *Osorio* at 21, 801 F.Supp. at 976. The present matter *is* such a case.

Nor is the court persuaded by Peck's reliance on Rule 33 of the Federal Rules of Criminal Procedure.[6] Peck argues that because he could not have known about the defect before its recent discovery, his motion is timely as Rule 33 permits a new trial based on newly discovered evidence. (*See* Def.'s Reply Gov.Opp. at 1–2.) First, the court does not view the Jury Wheel error as newly discovered evidence. Although the precise mechanism causing the underrepresentation may have been discovered only recently, the resulting imbalance in the jury pool was conspicuous. Second, even if the court agreed that the error was newly discovered evidence within the meaning of Rule 33, the Rule merely permits a court, in its discretion, to order a new trial; it does not mandate such action. *See* Rule 33, Fed. R.Crim.P.

Thus, because Peck had specific knowledge of the geographical make-up of the jury venire, the court finds that Peck had adequate notice of any actual or potential deficiencies in the jury pool and that his objections to the selection process are not timely.

### B. Lack of Prejudice

The government argues, in addition, that Peck has not suffered any prejudice as a result of the jury selection process because there was ample evidence of his criminal liability. The court agrees.

Although it cannot be the dispositive issue, the lack of prejudice in a particular case may inform a court's decision whether to grant relief from the Rule 12(b)(2) waiver requirement. "[W]here ... objection to the jury selection has not been timely raised under Rule 12(b)(2), it is entirely proper to take absence of prejudice into account in determining whether a sufficient showing has been made to warrant relief from the effect of that Rule." *Id.* at 363. Indeed, some courts have made prejudice a prerequisite for finding cause for relief from waiver. *See, e.g., Dumont v. Estelle*, 513 F.2d 793, 797 (5th Cir.1975) (The requirement of cause must be satisfied by a strong showing of actual prejudice.), *reh'g denied*, 532 F.2d 1375 (1976).

---

5. *See, e.g., Moniz turns spotlight on jury-pool bias, Conn. L. Trib.*, Dec. 23, 1991, at 37 ("The process ... is tilted against proportional representation of black jurors."); *In Hartford few defendants judged by peers, lawyers say, Hart. Cour.*, Nov. 14, 1991, at A1 (lawyers in the system say they rarely find more than a handful of residents from Hartford when questioning potential jurors. They say a disproportionate majority ... are from the suburbs.).

6. Rule 33, Fed.R.Crim.P. states, in part, "[t]he court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice.... A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment...." Rule 33, Fed.R.Crim.P.

Peck was convicted of tax offenses on the basis of clear and overwhelming evidence of his guilt. Peck, who is a non-hispanic caucasian, provides no evidence or reason for the court to find that he has been prejudiced in any way by the absence of Hartford and New Britain jurors from the Jury Wheel. Although lack of prejudice alone is not a basis to deny the claim, because Peck failed to raise a timely objection, had adequate notice, and has failed to show resulting prejudice, the court finds that he has waived his constitutional and statutory rights to challenge the jury selection process.

## II. *Fifth Amendment Claim*

■ Because the court finds that Peck's jury challenge is untimely, all of Peck's claims fail. The court notes, however, that Peck's Fifth Amendment claim also fails on substantive grounds. Peck argues that the absence of Hartford and New Britain jurors from the Jury Wheel violated his Fifth Amendment right to equal protection. The court disagrees.

The Second Circuit has articulated a three-part test to determine whether a defendant has established a prima facie case of jury discrimination that would amount to a denial of equal protection in violation of the Fifth Amendment. This test requires: "(a) a cognizable group, (b) that is substantially under represented and (c) a selection procedure that is not racially neutral." *United States v. Biaggi,* 909 F.2d 662, 676 (2d Cir.1990), *cert. denied,* 499 U.S. 904, 111 S.Ct. 1102, 113 L.Ed.2d 213 (1991). In *Biaggi,* the defendant challenged the Southern District of New York's use of voter registration lists as the source of its jury pool, claiming that the process resulted in an underrepresentation of blacks and hispanics on jury panels in violation of his Fifth Amendment right to equal protection. The *Biaggi* Court rejected the equal protection claim as it found that any underrepresentation that resulted from the

process was tolerable because it was the product of a neutral system.

The Second Circuit contrasted, however, the underrepresentation that results from the use of voter registration lists with that which resulted from a quota system that favored small towns with lower minority populations. Although the Jury Wheel in Hartford is premised on a system similar to the New York approach upheld in *Biaggi,* the system error made the Hartford jury selection procedure more akin to the quota system approach which the Second Circuit found violated equal protection in *Alston v. Manson,* 791 F.2d 255 (2d Cir.1986), *cert. denied,* 479 U.S. 1084, 107 S.Ct. 1285, 94 L.Ed.2d 143 (1987). However, the Hartford approach was not designed to favor towns with lower minority populations, as the quota system in *Alston.* Rather, the jury-pool deficiencies were the result of a misplacement of the name "Hartford" on computer records, not an effort to mold the make-up of the jury pool.[7] Therefore, absent a showing of discriminatory intent underlying the process, the court finds that there has been no Fifth Amendment violation. *See Alston,* 791 F.2d at 259 ("The fourteenth amendment ... imposes the additional requirement of discriminatory purpose.").

### *CONCLUSION*

For the foregoing reasons the defendant's motion is hereby denied.

SO ORDERED.

7. Specifically, the city's name was listed in the wrong place on the computer records such that the "d" at the end of "Hartford" was forced down into the column used to describe the status of the prospective juror. A "d" in the status column indicates that an individual is dead; thus, all Hartford residents were considered dead by the computer and were not sent the jury questionnaires. New Britain residents were excluded because the New Britain names mistakenly were never entered into the computer. *See Computer Killed Jurors before They Could Serve, Hart. Cour.,* Sept. 29, 1992, at A1.