Harrison BERRIER, Petitioner-Appellee,

v.

Charles E. EGELER, Warden, State Prison of Southern Michigan at Jackson, Respondent-Appellant.

No. 77-1100.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 13, 1977.

Decided Aug. 8, 1978.

As Amended Oct. 5, 1978.

Certiorari Denied Nov. 6, 1978. See 99 S.Ct. 354.

Engel, Circuit Judge, dissented and filed opinion.

Frank J. Kelley, Atty. Gen. of Michigan, Robert A. Derengoski, Sol. Gen., Thomas L. Casey, Asst. Atty. Gen., Lansing, Mich., for respondent-appellant.

Arthur J. Tarnow, Detroit, Mich., for petitioner-appellee.

Before EDWARDS and ENGEL, Circuit Judges, and GRAY,* Senior District Judge.

EDWARDS, Circuit Judge.

This is a habeas corpus petition where a District Judge in the Eastern District of Michigan, Southern Division, granted petitioner the relief he sought. The facts show that petitioner killed his brother-in-law in his (the petitioner's) home. He contended that he shot in self-defense. The trial judge, in a confused instruction, told the jury that the defendant had the burden of

---

* Honorable Frank Gray, Jr., Senior United States District Judge for the Middle District of Tennessee, sitting by designation.

proof as to self-defense and that he had a duty to retreat, if possible, in his own home.

Appellant was convicted of first degree murder by the jury and sentenced to life imprisonment. The Michigan Court of Appeals vacated the sentence and, under the trial record, resentenced for second degree murder. Petitioner therefore is now serving a 20–40 year sentence.

His present petition contends that his due process rights were violated by the fact that at the trial the judge placed the burden of proof that the killing was in self-defense upon defendant and, in addition, instructed the jury that defendant at the time of the killing was under a duty to retreat in his own home to the degree he could do so safely. This instruction, he asserts, was in violation of Michigan law, *People v. Stallworth,* 364 Mich. 528, 111 N.W.2d 742 (1961), and federal constitutional law, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

The facts as revealed in the state court trial of this case were recited as follows in the opinion of the Michigan Court of Appeals:

> The decedent was defendant's brother-in-law. Animosity existed between them, arising from the fact that decedent had testified against defendant in a prior criminal trial. Defendant testified that about 9:30 on the night of March 30, 1970, decedent came to defendant's home and said to defendant that decedent had heard that defendant was "looking" to kill him. To this defendant replied, "No Joe, you're not worth it." Defendant then related that shortly thereafter he and decedent went for a ride, settled their differences, and shook hands.

> Defendant returned home and watched TV. He was drowsing about 11:15, when he heard a ruckus at the outside door, and defendant testified that he heard his wife scream, "Look out he's got a gun or look out, he's going to kill you." Defendant said that he grabbed a loaded .22 rifle

standing against the wall next to him, stepped through the kitchen door, saw the figure of an unknown man, who appeared to be violent, entering the kitchen. That defendant shot the man and later called the police. Decedent was shot seven times.

> \*     \*     \*     \*     \*     \*

> During defendant's direct testimony, he attempted to relate the statement allegedly made by his wife, "He is going to kill you." The prosecutor objected on the basis of hearsay and was sustained. On appeal, defendant asserts this was reversible error because the statement was admissible as a res gestae statement. We agree with defendant that the statement was admissible as a res gestae statement and that it was error to exclude it. We do not agree that the error was reversible error for the reason that the same statement was twice related to the jury, once in a taped statement by defendant and once during his cross-examination.

> The only persons present at the shooting were defendant, his wife, and decedent.

*People v. Berrier,* 48 Mich.App. 454, 456–58, 210 N.W.2d 506, 507 *leave to appeal denied,* 390 Mich. 813 (1973).

There has been exhaustion of state court remedies on the issues with which we are presently concerned. But it is clear that the original appeals in the Michigan court system did not center upon the judge's instructions which concern us now, perhaps because no objection was made to them by appellant's counsel at trial.

The grounds for the grant of the writ of habeas corpus are effectively set forth in the opinion of District Judge John Feikens, dated November 22, 1976:

> Berrier's allegation is that the trial judge's instructions to the jury placed upon him the burden of proving his claim of self-defense. This, if shown, amounts to plain constitutional error and warrants the grant of a petition for a writ of

habeas corpus.[2] It is well settled that

[2] *See generally,* Note: Affirmative Defenses and Due Process: The Constitutionality of Placing a Burden of Persuasion on A Criminal Defendant, 64 *Georgetown Law Journal* 871 (1976).

"the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). The United States Supreme Court [has] recently considered (*Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)) a jury instruction which placed upon the defendant the burden of showing by a fair preponderance of the evidence, that he had acted in the heat of passion and, thus, without malice aforethought when he fatally assaulted the deceased. The court held, "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt the *absence* of the heat of passion or sudden provocation when the issue is properly presented in a homicide case." *Mullaney* at 705, 95 S.Ct. at 1892 (emphasis added).[3] Similarly, a de-

[3] For additional authority that the burden of proof should never shift to the defense in a criminal case, *see, e. g., Smith v. Smith,* 454 F.2d 572 (5th Cir. 1971), *cert. denied,* 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972) [alibi defense]; *Trimble v. Stynchcombe,* 481 F.2d 1175 (5th Cir. 1973) [alibi defense]; *Cool v. United States,* 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) [exculpatory accomplice testimony]; *Dixon v. Hopper,* 407 F.Supp. 58 (M.D.Ga.1976) [alibi defense]; *Stump v. Bennett,* 398 F.2d 111 (8th Cir.), *cert. denied,* 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968) [alibi defense]; *United States v. Ambrose,* 483 F.2d 742 (6th Cir. 1973) [entrapment]; *United States v. Sennett,* 505 F.2d 774 (7th Cir. 1974) [insanity defense]. *Contra, Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) [no constitutional right to an instruction that government must prove sanity].

fendant should not have to prove the elements of self-defense. Rather, under the *Winship* standard, the government should be required to prove beyond a reasonable doubt the absence of the elements of self-defense.[4]

[4] The court notes that this is also the rule in Michigan. *People v. Stallworth,* 364 Mich. 528, 111 N.W.2d 742 (1961).

In Berrier's case the trial judge instructed the jury as to the elements of self-defense—that the defendant may not be the aggressor, that the defendant must reasonably believe that he or another under his protection is in danger of death or great bodily harm, and that there must be no way open for the defendant to retreat safely. (Transcript at 557). He then gave the correct instruction that a person in his own home need not retreat if assaulted. (Transcript at 558). The judge then went on to say:

"You are to determine from all of the evidence whether facts constituting such reasonable cause have been established and unless such facts constituting such reasonable cause have been established by the defense in this case you cannot acquit on the ground of self defense  .  .  .."

(Transcript at 559).

This statement implies that the defendant must prove his claim of self-defense. A short time later the trial judge made this confusing statement:

Self-defense in proper cases is the right of every person but it will not justify the taking of a human life unless the jurors shall be satisfied from the testimony first that the Defendant was not the aggressor in bringing on the difficulty, that is, that he was without fault; second, that there existed at the time of the striking of the fatal blow in his mind a present and impending necessity to strike such a blow in order to save himself from death or some great bodily harm; third, that there must have been no way open whereby he could have retreated as it appeared to him at the time to a place of safety and thus have avoided the conflict. Unless you find that all three of these facts are established in this case then the plea of self-defense fails. The burden of proof of all such matters

is upon the People to show that the respondent is guilty of the offense charged and the People's testimony must be such as to satisfy the jurors that the killing was not done in self defense. The burden is not on the Defendant who makes the claim of self defense to satisfy the jury of the truth of his claim.

(Transcript at 560–561).

Here the trial judge did not instruct the jury that a person in his own home has no duty of retreat, a crucial instruction in this case since the testimony showed that the defendant was in his own home when he killed his brother-in-law. This is error under Michigan law. *People v. Lenkevich,* 394 Mich. 117, 229 N.W.2d 298 (1975). The judge then went on to imply again that the defendant must establish the elements of self-defense. This mistake is only partially rectified by his final statement relieving the defendant from the burden of satisfying the jury of his claim.

Jury instructions are to be judged as a whole. *Cupp v. Naughten,* 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973); *United States v. Mattucci,* 502 F.2d 883, 888–9 (6th Cir. 1974). However, instructions must not be such as to mislead the jury; they should be consistent and harmonious. *Smith v. United States,* 230 F.2d 935, 939 (6th Cir. 1956) ["The fact that one instruction is correct does not cure the error in giving another that is inconsistent with it."] *See also United States v. Reid,* 517 F.2d 953, 965 (2d Cir. 1975); and cases cited therein.

In this case it is clear that the jury was confused when it began deliberations. After it had deliberated for a short time it asked the court to repeat the "three elements necessary to be present for a self defense decision." (Transcript at 569). The phrasing of the question indicates that the jury was approaching deliberations with the mistaken assumption that it must decide that the elements of self-defense had been established before returning a not guilty verdict. The trial judge's answer further misinformed the jury:

Self defense is, in a proper case, a good defense and the right of every person, but it will not justify the taking of human life unless the jurors are satisfied from the testimony of all three of the following things. First, that the Defendant was without fault, second, that there existed in the Defendant's mind at the time he fired the weapon a present and impending necessity to shoot the decedent in order to save himself or a member of his family from death or some great bodily harm; and, third, that there must have been no way open whereby he could have retreated as it appeared to him at the time to a place of safety and thus have avoided the conflict.

Although the trial judge admonished the jury that this answer was to be taken in conjunction with all of the instructions (Transcript at 571), it is clear that the answer emphasized the erroneous instructions given earlier, repeating the wrong instruction on duty of retreat and again placing upon the defendant the burden of establishing his claim of self-defense. This removes any possibility that the error could be considered harmless beyond a reasonable doubt. *See Mullaney,* 421 U.S. at 705, 95 S.Ct. 1881 (Rehnquist, J., concurring); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The court concludes that the trial judge's instructions on the issue of self-defense denied due process to the defendant and rendered his trial fundamentally unfair in a constitutional sense. Since this conclusion is dispositive of Berrier's petition, the court declines to consider any of his other allegations.

*Berrier v. Egeler,* 428 F.Supp. 750, 752–54 (E.D.Mich. 1976).

On review of the appellate record before us, we conclude that appellant's federal due

process rights were violated by failure to place the burden of proof upon the state as to appellant's self-defense theory. *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). *See also People v. Stallworth,* 364 Mich. 528, 111 N.W.2d 742 (1961).

Nor do we find any conflict between the District Judge's opinion and more recent Supreme Court cases such as *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In *Patterson* the Court's opinion clearly recognizes that "a state must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." *Patterson v. New York, supra,* 432 U.S. at 215, 97 S.Ct. at 2330.

Although there is general language in the trial judge's charge in this case placing the burden of proof upon the prosecution to establish guilt beyond reasonable doubt, a major portion of the charge consisted of the following:

While I will instruct you further on this point, I will add at this point, so there is no misunderstanding, that, that as the second element of self defense which I have just discussed, that is in the Defendant's mind there must be a present and impending necessity to shoot the Defendant in order to save himself from death or some great bodily harm. This extends also to protect members of his family toward whom he owes a duty of such protection in a proper case where that is shown.

The right to defend one's self against danger not of his own seeking, which is a right which the law guarantees to all men and the same right which exists to protect himself, exists also for those depending upon him such as members of his family. In this case the Defendant had the same right to protect his wife or family that he would have had to protect himself in a like situation, though the danger was threatened to his wife, his family or unto himself, if at the time the Defendant shot the deceased, he had reasonable cause to apprehend on the part of the deceased a design to do to himself or to his family great personal injury, and there was reasonable cause for him to apprehend immediate danger of such design being accomplished and to avert such apprehended danger he shot and at the time he did so he had reasonable cause to believe it necessary for him to shoot in the way he did to protect himself and/or his wife and family from such apprehended danger, then and in that case, the shooting was not felonious but was justifiable and you ought to acquit him on the grounds of necessary self defense.

It is not necessary to this defense that the danger should have been actual or real or that the danger should have been impending and immediately about to follow. All that is necessary is that the Defendant had reasonable cause to believe and did believe these facts, but before you acquit on the ground of self defense you ought to believe that the Defendant because of apprehension for himself and/or his family was reasonable. You are to determine from all of the evidence whether facts constituting such reasonable cause have been established and unless such facts constituting such reasonable cause have been established by the defense in this case you cannot acquit on the ground of self defense, but his actions and conduct are to be judged from the circumstances as they appeared to him at that time and if from all the evidence in the case there exists in your mind a reasonable doubt whether the respondent did not in fact kill Joseph Matolovich in defense of himself and/or his wife or family, honestly believing his life and/or the life of his wife and family was in jeopardy or that he was in danger of receiving serious bodily injury at the hands of Joseph Matolovich, then it would be your duty to render a verdict of

not guilty. It is not necessary to his defense that the danger should have been actual or real, or that the danger should have been impending and immediately about to follow, the actions and conduct of the respondent are to be judged from the circumstances as they appeared to him at the time. One who is suddenly attacked by an adversary is not held to fine distinctions of judgment as to what is in the mind of his adversary or what is his adversary is about to do or to how much force it is necessary for him to use to protect his life or his person from serious harm.

In justification of the offense here charged against him, the respondent has interposed a plea of self defense and under certain circumstances this is a good defense. To make the plea available it must appear that the respondent was without fault on his part, if he himself was the aggressor in the conflict he cannot invoke the doctrine of self defense as an excuse for the killing unless he was at that time in immediate danger of loss of his own life or suffering some grievous bodily injury and there was no retreat open to him and his only safety lay in striking the blow which caused the death of the deceased.

Perhaps even more important is the fact that when the jury in the course of its deliberations sent a note to the judge requesting instructions upon "three elements necessary to be present for a self-defense decision," the record discloses that the trial judge failed to indicate that the burden of proof on the self-defense issue was on the prosecution and repeated a previously erroneous instruction on the duty to retreat:

THE COURT: Thank you. The record may so indicate. Ladies and gentlemen, I have a note that you handed to the bailiff for my attention which reads as follows: Three elements necessary to be present for a self defense decision. I will reinstruct you on this point since you will have to depend on this verbal instruction, I will ask you to listen carefully.

Self defense is, in a proper case, a good defense and the right of every person, but it will not justify the taking of human life unless the jurors are satisfied from the testimony of all three of the following things. First, that the Defendant was without fault, second, that there existed in the Defendant's mind at the time he fired the weapon a present and impending necessity to shoot the decedent in order to save himself or a member of his family from death or some great bodily harm; and, third, that there must have been no way open whereby he could have retreated as it appeared to him at the time to a place of safety and thus have avoided the conflict. I will read that again for you.

Self defense is, in a proper case, a good defense and the right of every person, but it will not justify the taking of human life unless the jurors are satisfied from the testimony of all three of the following things. First, that the Defendant was without fault; secondly, that there existed in the Defendant's mind at the time he fired the weapon, a present and impending necessity to shoot the decedent in order to save himself or a member of his family from death or some great bodily harm; and third, that there must have been no way open whereby he could have retreated as it appeared to him at the time, to a place of safety and thus avoided the conflict.

I trust this will be of assistance to you. The jury is excused in company with the bailiff. You may retire to the jury deliberation room.

(Jury left the Courtroom at 5:13).

THE COURT: I will ask Counsel if they are satisfied with the additional instructions which the Court has just given the jury.

Neither counsel entered any objection to the charge.

We recognize that appellee Berrier emphasizes that Michigan law does not impose a duty to retreat upon one who is threat-

ened in his own home. *People v. Lenkevitch,* 394 Mich. 117, 229 N.W.2d 298 (1975); *People v. Stallworth,* 364 Mich. 528, 535, 111 N.W.2d 742, 746 (1961); *People v. Johnson,* 75 Mich.App. 337, 254 N.W.2d 667 (1977). It, however, is by no means clear that this aspect of the trial judge's failure to give a proper instruction would be held to be a federal due process violation in a habeas corpus case. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). As a consequence, we place no reliance upon this clear error in application of Michigan law in our affirmance of the issuance of the writ of habeas corpus.

■ Under Michigan law proof of the absence of grounds for self-defense is an element of the crime of murder upon which the prosecution must bear the burden of proof.[1] This has been true for many years. One of the clearest statements is found in the leading Michigan case of *People v. Coughlin,* 65 Mich. 704, 32 N.W. 905 (1887), where the Supreme Court of Michigan said:

CHAMPLIN, J. Respondent was convicted of manslaughter, and sentenced to be confined in the state prison at Jackson at hard labor for the period of 13 years. The circuit judge charged the jury that, in cases where the respondent seeks to justify his acts of killing as done in self-defense, the burden of proof is upon himself to establish the killing to have been done in self-defense. This was error. In civil cases the burden of proof is generally upon the party who affirms the existence of facts necessary to make out his case. In criminal cases, however, the burden of proof is upon the prosecutor to show that the accused is guilty of the offense charged. The charge made against respondent in this case *could not be made out* unless the testimony should exclude the idea of self-defense beyond a reasonable doubt. Consequently it was incumbent upon the people to show such facts and circumstances as convinced the jury that the killing was not done in self-defense.

*People v. Coughlin, supra* at 705, 32 N.W. at 905 (emphasis added).

It is perfectly clear, of course, that appellee Berrier in his state court trial did seek "to justify his acts of killing as done in self-defense," and hence, the burden of proof was upon the prosecution to show that "the killing was not done in self-defense." The Michigan Supreme Court has adhered to this principle without deviation through a long line of cases: *People v. Cathey,* 220 Mich. 628, 631–32, 190 N.W. 753 (1922); *People v. Asbury,* 257 Mich. 297, 298–99, 241 N.W. 144 (1932); *People v. Stallworth,* 364 Mich. 528, 535, 111 N.W.2d 742 (1961); *People v. Jackson,* 390 Mich. 621, 626, 212 N.W.2d 918 (1973).

■ We entertain no doubt that as a matter of federal due process the prosecution must prove beyond reasonable doubt every fact necessary to constitute the crime charged. *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Patterson v. New York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). In Michigan an element of proof of murder is evidence which negates self-defense, in any case where self-defense is claimed and evidence is offered thereon. *See* citations in paragraph above. In this posture of the case, we believe that the District Court and this court are controlled by the Fourteenth Amendment as it has been interpreted by the Supreme Court of the United States in *In re Winship, supra, Patterson, supra,* and *Mullaney v. Wilbur, supra.*

In this last case, Mr. Justice Powell, writing for a unanimous Court, held as follows:

Not only are the interests underlying *Winship* implicated to a greater degree in this case, but in one respect the protection afforded those interests is less here. In *Winship* the ultimate burden of persuasion remained with the prosecution, although the standard had been reduced to proof by a fair preponderance of the

---

1. In Michigan murder is defined by common law rather than by statute.

evidence. In this case, by contrast, the State has affirmatively shifted the burden of proof to the defendant. The result, in a case such as this one where the defendant is required to prove the critical fact in dispute, is to increase further the likelihood of an erroneous murder conviction. Such a result directly contravenes the principle articulated in *Speiser v. Randall,* 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460 (1958):

> "[W]here one party has at stake an interest of transcending value—as a criminal defendant his liberty—th[e] margin of error is reduced as to him by the process of placing on the [prosecution] the burden . . . of persuading the factfinder at the conclusion of the trial . . . ."

See also *In re Winship,* 397 U.S., at 370–372, 90 S.Ct. 1068 (Harlan, J., concurring). *Mullaney v. Wilbur, supra,* 421 U.S. at 700–01, 95 S.Ct. at 1890.

■ Nor do we believe that the error in this charge can be ignored because of the failure of counsel to enter objection to it. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). While normally under Michigan law the absence of objection may preclude appellate review of a claimed error, nonetheless, when any charge omits an essential element of a crime, reversible error may be found. *People v. Liggett,* 378 Mich. 706, 148 N.W.2d 784 (1967); *People v. Townes,* 391 Mich. 578, 218 N.W.2d 136 (1974); *People v. Peoples,* 75 Mich.App. 616, 255 N.W.2d 707 (1977); *People v. Dorrikas,* 354 Mich. 303, 316, 92 N.W.2d 305, 307 (1957).

■ Like the District Judge, we find no bar to habeas relief in this case because appellant's trial counsel made no objection to the state judge's instructions at the time of trial. The magnitude of the error in this trial would make it cognizable in a habeas proceeding as plain error even where no objection had been made before the trial court. *United States v. Buffa,* 527 F.2d 1164 (6th Cir. 1975).

We recognize that the test for habeas relief is even more difficult for a petitioner to overcome. Thus, the Supreme court has said:

> The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," *Cupp v. Naughten,* 414 U.S., at 147 [94 S.Ct. 396, 400, 38 L.Ed.2d 368], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.,* at 146, 94 S.Ct. [396] at 400.

*Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). (Footnote omitted.)

Nonetheless, we conclude that the error here went to the central issue of guilt or innocence and infected the fairness of the trial itself.

A federal habeas court has made its own independent determination of this petitioner's federal claim that he is detained pursuant to a final judgment of a state court, in violation of the United States Constitution. The Supreme Court has recently noted that this principle has not been disturbed by recent cases. *See Wainwright v. Sykes, supra,* 433 U.S. at 87, 97 S.Ct. at 2506–07.

Finally, we reject the argument of the State Attorney General on behalf of the warden that despite all that has been said above, the error should be deemed harmless beyond reasonable doubt within the rule of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Here the jury's inquiry recited by the District Judge clearly shows its preoccupation with the self-defense issue.

The judgment of the District Court is affirmed.

ENGEL, Circuit Judge, dissenting.

I respectfully dissent.

I fully agree with the majority that the instructions given by the state trial court were confusing and deficient. Were this matter before us on direct review from a trial court within our own system, there is little doubt in my mind that the exercise of the court's supervisory powers to reverse would be justified. We act here, however, within the narrower confines of federal habeas corpus law.

Like federal law,[1] Michigan law requires that, when self-defense is injected into a trial by the introduction or existence of some evidence supporting the claim, the burden is upon the state to prove beyond a reasonable doubt not only each element of the crime charged but also that the defendant did not act in self-defense.[2] Unlike the majority, I do not conceive that this rule, under Michigan law, makes the absence of self-defense an element of proof of the crime itself, which the state must invariably prove beyond a reasonable doubt, *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), rather than an affirmative defense, which is not subject to such a

constitutional imperative. *Patterson v. New York,* 432 U.S. 197, 205–11, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).[3] *See Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952) (insanity defense), *discussed with approval, Patterson, supra,* 432 U.S. at 204–07, 97 S.Ct. 2319; *Hankerson v. North Carolina,* 432 U.S. 233, 245, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (Blackmun, J., concurring) (self-defense).

If self-defense is not in issue in a murder trial, there is no obligation under Michigan law for the trial judge to instruct the jury upon it. *People v. Townes,* 391 Mich. 578, 218 N.W.2d 136, 141 (1974); *People v. Dickerson,* 30 Mich.App. 447, 186 N.W.2d 850, 852 (1971); *People v. Johnson,* 13 Mich.App. 69, 163 N.W.2d 688, 691 (1968), *rev'd on other grounds,* 382 Mich. 632, 172 N.W.2d 369 (1969), *cert. denied,* 397 U.S. 1079, 90 S.Ct. 1533, 25 L.Ed.2d 816 (1970).[4] The duty to instruct under Michigan practice arises only if the evidence in the particular case suggests its applicability. Even though the state, as a matter of its own law, has elected to negate self-defense beyond a reasonable doubt, the defendant must first introduce or at least point to

---

1. *E. g., United States v. Jackson,* 569 F.2d 1003 (7th Cir. 1978); *United States v. Corrigan,* 548 F.2d 879 (10th Cir. 1977); *Frank v. United States,* 42 F.2d 623 (9th Cir. 1930); 2 E. Devitt & C. Blackmar, Federal Jury Practice & Instructions § 41.19 (1977).

2. *E. g., People v. Asbury,* 257 Mich. 297, 241 N.W. 144 (1932); *People v. Coughlin,* 65 Mich. 704, 32 N.W. 905 (1887); *see People v. Stallworth,* 364 Mich. 528, 111 N.W.2d 742 (1961).

   The Michigan State Bar Special Committee on Standard Criminal Jury Instructions prepared the following on self-defense:

   The defendant is not required to prove that he acted in self-defense. The prosecution has the burden of proof of guilt beyond a reasonable doubt, and this includes the responsibility of proving that the defendant was not acting in self-defense.

   Michigan Criminal Jury Instructions 7:9:06 (1977 ed.).

3. *Patterson* states:

   We thus decline to adopt as a constitutional imperative, operative country-wide, that a State must disprove beyond reasonable doubt

every fact constituting any and all affirmative defenses related to the culpability of an accused. Traditionally, due process has required that only the most basic procedural safeguards be observed; more subtle balancing of society's interests against those of the accused have been left to the legislative branch. We therefore will not disturb the balance struck in previous cases holding that the Due Process Clause requires the prosecution to prove beyond reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged. Proof of the nonexistence of all affirmative defenses has never been constitutionally required; and we perceive no reason to fashion such a rule in this case and apply it to the statutory defense at issue here.

432 U.S. at 210, 97 S.Ct. at 2327.

4. The pattern jury instructions for Michigan, however, recommend a generalized instruction on the absence of justification or excuse which is to be given in every case:

   "A killing is not murder if it is justified [or] excuse . . . ." Michigan Criminal Jury Instructions, *supra,* 16:3:01(7).

evidence from which its existence may be inferred.

Where the state has permissibly cast upon the defendant the burden of producing evidence to support the existence of a fact, negation of that fact is not in common understanding an element of the crime. Absence of self-defense is simply not a fact which must be proved for every charge of murder in Michigan, and it is anomalous to label it an element for some murder prosecutions and not for others. The foregoing reasons convince me that the absence of self-defense is not an element of the crime for which Berrier stands convicted.

*Patterson* indicates, without elaboration, that there are substantive constitutional restraints on a state's power to define the elements of crime. 432 U.S. at 210, 97 S.Ct. 2319. I am not convinced, however, that due process requires Michigan to make the absence of self-defense an element of homicide, rather than an affirmative defense, and I do not understand the majority to so hold. That being the case, Michigan may elect to allocate the burden to prove the mitigating fact of self-defense however it chooses, just as in *Patterson* the state permissibly burdened the defendant with the obligation to prove the mitigating fact of extreme emotional disturbance. *See* Allen, *The Restoration of* In re Winship: *A Comment on Burdens of Persuasion in Criminal Cases After* Patterson v. New York, 76 Mich.L.Rev. 30, 42–46 (1977).

While it is unnecessary to suggest, as Professor Allen convincingly does,[5] that *Patterson v. New York* overruled *Mullaney v. Wilbur,* it seems reasonably clear that

*Patterson* would permit a state to treat self-defense as an outright affirmative defense and to allocate the burden of persuasion to the defendant as the instructions, according to the majority, did at Berrier's trial. If the foregoing view is correct, then the state trial judge's instructions, though perhaps erroneous under state law,[6] do not violate constitutional rights under *Mullaney v. Wilbur,* as later refined in *Patterson,* where the ordinary and traditional elements of second-degree murder were proved beyond a reasonable doubt.

Even if the instructions were found violative of *Mullaney v. Wilbur,* I am of the opinion that the failure of counsel to object at trial to the instructions as given precludes our reaching the issue here by application of the more narrow review of state error propounded in *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), and *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also Henderson v. Kibbe,* 431 U.S. 145, 157, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (Burger, C. J., concurring). Those decisions rejected the "deliberate bypass" language of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), in favor of a rule precluding federal habeas review in states having a contemporaneous objection rule where it is shown that defense counsel failed to object timely to the error.[7] A federal court may overlook the state procedural waiver only if the habeas petitioner bears his burden of showing both "cause" justifying his failure to object and "prejudice" actually resulting to the petitioner from the constitutional error. Michigan had and has a contemporaneous objection rule.[8]

---

5. Allen, *supra,* 76 Mich.L.Rev. at 53–55.

6. The law of the case, as far as Michigan law is concerned, is that the instructions given by the state trial court are correct, regardless of any contrary view we may have regarding state law.

7. *Wainwright v. Sykes* indicates that a federal court, as a matter of comity, must give effect to a state's contemporaneous objection rule. The Court recognized that the state procedural requirement serves several legitimate purposes which would be undermined if a federal habeas

forum were permitted to overlook the default. 433 U.S. at 88–90, 97 S.Ct. 2497. Acknowledging that a contemporaneous objection rule would be an adequate and independent state procedural ground which would bar direct review, *id.* at 86–87, 97 S.Ct. 2497, the Court held that a procedural default must also be honored in a collateral attack upon a state conviction.

8. Michigan's court rules expressly provide that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the

While *Wainwright,* on its facts, was concerned with the failure of counsel in the state trial to object to the admission of a confession later claimed to violate the defendant's rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *Hankerson v. North Carolina, supra,* decided contemporaneously with *Wainwright* and involving the retroactive application of *Mullaney* furnishes considerable authority that *Wainwright* was intended to be fully applicable to waivers resulting from the failure to object to jury instructions. In *Hankerson,* as here, it was claimed that the state trial judge's instructions to the jury in the petitioner's state murder trial impermissibly shifted to the defendant the burden of proving the defense of self-defense, contrary to the holding of *Mullaney v. Wilbur, supra.* While holding that *Mullaney* was to be retroactively applied, Justice White in *Hankerson* expressly met the state's argument that retroactive application would be "devastating" by observing that the states could "insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." *Hankerson, supra,* 432 U.S. at 244 n. 8, 97 S.Ct. at 2346.

Petitioner has not met his burden under *Wainwright* of showing any cause justifying the failure of counsel to object at trial

verdict, stating specifically the matter to which he objects and the grounds of his objection." GCR 516.2, made applicable to criminal trials by GCR 11 and 785. *See also People v. Rand,* 397 Mich. 638, 247 N.W.2d 508, 511 (1976); *People v. Hall,* 396 Mich. 650, 242 N.W.2d 377 (1976); *People v. Alcala,* 396 Mich. 99, 237 N.W.2d 475 (1976).

9. As in *Wainwright v. Sykes, supra,* Berrier has furnished no explanation whatever for the failure to object at trial, even though an opportunity to do so was clearly afforded his counsel at the trial. I find the absence of cause under *Wainwright* to be particularly evident here, where any right to object was based upon a longstanding principle of law. *See* note 2, *supra.*

10. 433 U.S. at 84–85, 87, 97 S.Ct. 2497. *But cf. The Supreme Court, 1976 Term,* 91 Harv.L.Rev. 70, 218 (1977):

and, indeed, none can be gleaned from the record.[9] This should end the matter in my opinion, for the test in *Wainwright* is two-pronged and in the conjunctive.[10]

*Wainwright* necessarily assumes not only error but constitutional error of sufficient proportions to be cognizable in habeas proceedings; were it otherwise the Supreme Court would not have needed to determine the effect of procedural waivers occurring in the course of trial. *Wainwright* indicates that, notwithstanding substantial constitutional error, the writ may only issue upon the further showing of cause and prejudice. Assuming, however, that the language of Justice Rehnquist in *Wainwright* alluded to in the majority opinion, *ante* at 522, permits an examination into the question of prejudice, even where no cause is shown, I am convinced that the error here does not rise to that degree of substantiality which *Wainwright,* according to the majority, arguably suggests. My reasons are six-fold:

First, the instructions are actually contradictory as to which party bore the burden of persuasion on self-defense. In two portions of the charge, including one immediately following the lengthy quotation from the instructions in the majority opinion, *ante* at 519–520, the trial court squarely placed the burden of persuasion as to self-defense on the state.[11] It is well estab-

The Court has never made clear . . . whether [the elements of cause and prejudice] are in fact independent of each other.

11. Self defense in proper cases is the right of every person but it will not justify the taking of a human life unless the jurors shall be satisfied from the testimony first that the Defendant was not the aggressor in bringing on the difficulty, that is, that he was without fault; second, that there existed at the time of the striking of the fatal blow in his mind a present and impending necessity to strike such a blow in order to save himself from death or some great bodily harm; third, that there must have been no way open whereby he could have retreated as it appeared to him at the time to a place of safety and thus have avoided the conflict. Unless you find that all three of these facts are established in this case then the plea of self defense fails. *The burden of proof of all such matters is upon*

lished that "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

Second, the instructions themselves, though poor, did at least include the traditional charges on the presumption of innocence and reasonable doubt. In addition, the charge placed a particularly heavy burden of proof on the government in at least one respect.[12]

Third, the defendant's attorney was present and heard the entire instructions as actually delivered by the trial judge to the jury. That he thereafter expressed his satisfaction with them is affirmative evidence that the instructions were not considered prejudicial under Michigan law by a Michigan attorney, whose primary function was to protect his client from such prejudice.[13]

Fourth, the issue was essentially which of two irreconcilable versions of the incident the jury would believe. The government claimed that Berrier was angry with the decedent, his brother-in-law, for having testified against him in an earlier criminal trial and introduced evidence that Berrier had earlier expressed the intention to kill him. It was the government's contention that Berrier shot his brother-in-law seven times as the latter was leaving the Berrier home on the night in question. On the other hand, the defendant's theory and tes-

timony was that he heard a commotion at the door, heard his wife scream, feared for his own life and that of his family, and that he thereupon seized his gun and fired at the man in self-defense, not knowing who it was. In such circumstances subtle differences in the application of the law of self-defense, and even in the burden of proving it, are unlikely to have played an important role in the jury's deliberations.[14] Put simply, the critical issue was whether Berrier did or did not recognize his brother-in-law.

Fifth, the alleged constitutional error here pales in comparison with the potential prejudice to a defendant from the improper admission of his confession to the crime, an error which, in *Wainwright*, did not override the petitioner's duty to show cause and prejudice to avoid a procedural waiver of error.

Finally, Justice White in *Hankerson* persuasively indicates that a state like Michigan, whose rules provide a waiver of error for the failure to object to jury instructions, may effectively insulate past convictions from the retroactive application of *Mullaney*.

Accordingly, I would reverse and remand with instructions to dismiss the petition unless further proceedings in the district court should reveal merit in the other issues raised therein but not resolved in the district court or here.

---

the People to show that the respondent is guilty of the offense charged and the People's testimony must be such as to satisfy the jurors that the killing was not done in self defense. *The burden is not on the Defendant who makes the claim of self defense to satisfy the jury of the truth of his claim.* (Emphasis added).
Tr. at 560–61. Similar language also appeared earlier in the charge.

**12.** The trial court instructed:
To find the defendant guilty you must be able to say that there is no rational theory on which credible evidence can be reconciled, but that of the defendant's guilt.
Tr. at 562. An instruction of this nature need not be given in a federal trial. *Holland v. United States*, 348 U.S. 121, 139–40, 75 S.Ct.

127, 99 L.Ed. 150 (1954) (rejecting an instruction to the effect that the evidence must exclude every reasonable hypothesis other than that of guilt).

**13.** To the extent that the attorney's conduct may have failed to protect the petitioner, the issue of his competence under the Sixth Amendment is not before our court in this appeal. *See generally The Supreme Court, 1976 Term*, 91 Harv.L.Rev. 70, 217–18 (1977).

**14.** *See United States v. Jackson*, 569 F.2d 1003, 1010 (7th Cir. 1978). In a similar setting, the district court's failure to instruct that the government must prove beyond a reasonable doubt that the defendant did not act in self-defense was held not to be plain error, cognizable without an objection at trial.