**Gary TYLER, Petitioner-Appellant,**

v.

**C. Paul PHELPS, Director, Department of Corrections and Attorney General of the State of Louisiana, William Guste, Jr., Respondents-Appellees.**

**No. 79–3093.**

United States Court of Appeals, Fifth Circuit.

April 27, 1981.

Jack Peebles, Metairie, La., for petitioner-appellant.

Abbott J. Reeves, Asst. Dist. Atty., Research & Appeals, Gretna, La., for respondents-appellees.

### ON PETITION FOR REHEARING

Before COLEMAN, PECK * and KRAVITCH, Circuit Judges.

\* Circuit Judge of the Sixth Circuit, sitting by designation.

1. The Louisiana statute imposing a mandatory death penalty for persons found guilty of first degree murder was declared unconstitutional in *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). *Roberts* was decided after Tyler's trial, but before the Louisiana Supreme Court reviewed his conviction.

KRAVITCH, Circuit Judge.

Appellees' motion for rehearing is granted. The panel opinion, 622 F.2d 172 (5th Cir. 1980), is vacated in its entirety and the following issued as the opinion of this court.

Gary Tyler, appellant, was convicted of first degree murder in Louisiana state court and sentenced to die. On appeal, the death penalty [1] was vacated but the conviction was affirmed, *State v. Tyler*, 342 So.2d 574 (La.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). After unsuccessfully pursuing state habeas corpus, *Tyler v. Phelps*, 353 So.2d 1050 (La.1978), this 28 U.S.C. § 2254 action was filed. The district court denied relief and the petitioner appeals. We affirm.

At the time of the offense, Gary Tyler was a 16-year-old student at Destrehan High School. The morning of the murder had been marked by general turmoil and racial tensions, and Tyler had been suspended from school. Later in the day he was picked up and taken back to school by a deputy sheriff who suspected he was truant. By the time Tyler and the deputy arrived at the school, the school officials had decided to close the school and send all students home. After being told to go home immediately, Tyler boarded a bus loaded with other students.

Upon leaving the school grounds, the bus was meet with jeering and rock-throwing by the assembled crowd. As the bus proceeded, someone on the bus shot a .45 caliber automatic revolver into the crowd. The bullet struck and killed one boy and grazed another. It was alleged that Tyler shot the pistol and the jury so found in convicting him.

In his appeal to this court, Tyler raises two issues, both of which were raised on direct appeal and in his petition for state

Because of *Roberts*, Tyler's death sentence was vacated and life imprisonment without eligibility for parole, probation or suspension of sentence for twenty years was imposed. *State v. Tyler*, 342 So.2d 574, 577-78 (La.), *cert. denied*, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227 (1977). *See also State v. Jenkins*, 340 So.2d 157 (La.1976).

habeas: first, he contends he was convicted on the basis of an unconstitutional jury charge; second, he contends there is insufficient evidence to convict him of first degree murder.[2]

This case, like *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), involves the constitutionality of a state charge on presumptions. Unlike *Sandstrom*, however, this case also involves the question of whether habeas corpus relief is available to a defendant who did not object to the charge at trial. Accordingly, this court must determine first whether the charge as given was unconstitutional, and second whether any unconstitutionality must go unredressed because of the rule articulated in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

### Did the Charge on Presumptions Unconstitutionally Shift the Burden of Proof to the Defendant?

In *Sandstrom v. Montana*, the defendant was charged with "deliberate homicide," Mont.Code Ann. § 45–5–102 (1978), which requires that the homicide be committed purposely or knowingly. The defendant admitted that he killed the victim, but denied that he did so purposely or knowingly.

At trial, the primary issue was Sandstrom's mental state at the time of the homicide. He presented psychiatric testimony from which his counsel argued he had not acted with the requisite mens rea. Pursuant to the state's request, the trial court charged the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The defendant's timely objection was overruled; his conviction was affirmed on appeal to the Montana Supreme Court, but was reversed by the United States Supreme Court.

The Court noted that the charge at issue in *Sandstrom* is ambiguous; it is unclear whether it is a conclusive (i. e., if you find

Sandstrom caused the death of the victim you must find he did so intentionally) or nonconclusive (i. e., if you find Sandstrom caused the death of the victim and if he presents no evidence to the contrary, you must find he did so intentionally) presumption. Accordingly, the Court considered the due process ramifications of both types of presumptions.

■ Presumptions which act to preclude consideration of an element of the crime conflict with the presumption of innocence and invade the factfinding function of the jury. *United States v. United States Gypsum Co.*, 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Morisette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The effect of such conclusive presumptions is to relieve the State of its burden of proving beyond a reasonable doubt every element of the crime charged, an unconstitutional result under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

■ Nonconclusive presumptions, which shift only the burden of persuasion to the defendant, are also unconstitutional. Such a presumption was at issue in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), where the jury had been charged that malice aforethought is an essential and indispensable element of murder, but that if the State proved the homicide was both intentional and unlawful, malice aforethought was to be implied unless the defendant proved by a preponderance of the evidence that he acted in the heat of passion. 421 U.S. at 686, 95 S.Ct. at 1883. The Court in *Sandstrom* reiterated its *Mullaney* holding that such nonconclusive, burden-shifting charges are unconstitutional. 442 U.S. at 524, 99 S.Ct. at 2459. *See also Patterson v. New York*, 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

---

2. In his habeas petition Tyler also raised the following grounds for relief: (1) that his conviction was obtained on perjured testimony; (2) that the prosecution failed to disclose favorable evidence; (3) that the sentence violated the due process and ex post facto provisions of the United States Constitution; and (4) that he was denied effective assistance of counsel. Tyler has not pursued these issues on appeal and therefore has abandoned them.

At Tyler's trial, as is relevant here,[3] the primary issue was whether Tyler possessed a specific intent to kill or do great bodily harm to more than one person.[4] Inasmuch as the facts revealed that Tyler fired a fully loaded pistol only once, the State relied heavily on the statutory presumption that a defendant intends the natural and probable consequences of his acts. La.Rev.Stat. 15:432. The prosecutor stressed this presumption in both opening and closing arguments. The judge then charged the jury:

> Presumptions are deductions or conclusions which the law *requires* the jury to make under certain circumstances in the absence of evidence in the case which leads the jury to a different or contrary conclusion. A presumption continues to exist only so long as it is not overcome or outweighed by evidence in the case to the contrary. *But unless and until the presumption is so outweighed, the jury is bound to find in accordance with the presumption.*

I charge you with State Special Charge # 1 requested under Presumptions that the defendant intended the natural and probable consequences of his act. (T. 59F) (Emphasis added).

■ This charge is so similar to the charge in *Sandstrom* that we can come to no conclusion but that it had the same effect as that ruled unconstitutional by the *Sandstrom* Court. Accordingly, we hold that Tyler was convicted on the basis of an unconstitutional charge.[5]

---

**3.** At trial whether Tyler actually fired the pistol was at issue. He does not, however, contend in this court that there was insufficient evidence to support the conclusion that he fired the shot. Accordingly, we are treating the case as though Tyler did fire the shot.

**4.** At the time of Tyler's trial, La.Rev.Stat.Ann. § 14:30(4) was the only definition of first degree murder applicable to the facts of the case. It read, in relevant part:

> First degree murder is the killing of a human being
>
> \* \* \* \* \* \*
>
> (4) when the offender has a *specific intent* to kill or to inflict great bodily harm upon more than one person. . . . (Emphasis added)

Apparently, Tyler was charged with first degree murder, a capital crime, so that the court of general jurisdiction rather than the juvenile court would have jurisdiction over the case. In Louisiana at this time, the juvenile court had jurisdiction over all noncapital cases. La.Rev. Stat. 13:1570. Had the case been adjudicated in juvenile court, the most severe punishment which could have been imposed was juvenile supervision until the age of twenty-one at a juvenile detention facility. Furthermore, had the jury convicted Tyler of a lesser-included offense of first degree murder, the case would have had to be remanded to the juvenile court.

**5.** We recognize that doubts have been expressed as to whether *Sandstrom* is retroactive. *See United States v. Spiegel,* 604 F.2d 961 (5th Cir. 1979), *cert. denied,* 446 U.S. 935, 100 S.Ct. 2151, 64 L.Ed.2d 787 (1980). *See United States v. Chiantese,* 560 F.2d 1244 (5th Cir. 1977) (en banc) (burden-shifting presumptions require automatic reversal, but application of this rule held prospective only). Even if *Sandstrom* is not retroactive, however, this charge was unconstitutional under *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), which had been decided prior to the trial in this case.

The Maine homicide statute at issue in *Mullaney* established two types of homicide: murder and manslaughter. Both types of homicide required proof that the killing was unlawful (i. e., neither justified nor excused) and intentional. In addition to proof of an unlawful and intentional killing, the prosecution had to establish the killing was with malice aforethought in order to prove murder. The jury charge, however, required the jury to infer malice aforethought from proof of an intentional and unlawful killing unless the defendant proved that he acted in the heat of passion on sudden provocation.

The Supreme Court held such a charge to be unconstitutional because it permits the jury to convict a defendant of murder even though it is *as likely as not* that he was guilty only of manslaughter. 421 U.S. at 703, 95 S.Ct. at 1892 (emphasis in original).

In the case at bar, the State was obligated to prove Tyler acted with a specific intent to kill or to inflict great bodily harm on more than one person. If the prosecution proved only specific intent to kill one person, then a first degree murder conviction would not lie. The jury charge, however, required the jury to conclude that Tyler possessed such intent from proof of such an effect, unless the defendant proved to the contrary. Thus, Tyler could have been convicted of first degree murder even though it is *as likely as not* that he did not intend to kill or do great bodily harm to more than one person. This is an unacceptable possibility under the ruling of *Mullaney v. Wilbur.*

*The Effect of Wainwright v. Sykes*

█ It is undisputed that for a trial error to be reviewable in Louisiana, an objection must be made at the time of its occurrence. La.Code Crim.P. art. 841.[6] It is also undisputed that Tyler's counsel made no objection to the erroneous charge. Accordingly, the State asserts that under *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), any error must go unredressed.

█ Initially, we note that the State ignores the threshold question of whether the correctness of a jury charge is reviewable at all, and if so under what standard, by a federal habeas court. An erroneous instruction will support a collateral attack on the constitutional validity of a state court's judgment only if the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977), *quoting from Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). *Compare Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978) (charge not so uninformative and confusing as to constitute a denial of due process) *with Berrier v. Egeler*, 583 F.2d 515, 521–22 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978) (a muddled charge on who had the burden of proof on self-defense so infected the fairness of the trial as to warrant habeas relief). *See also Cronnon v. Alabama*, 587 F.2d 246 (5th Cir.), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979); *Bradley v. Wainwright*, 561 F.2d 1200 (5th Cir. 1977); *Higgins v. Wainwright*, 424 F.2d 177 (5th Cir. 1970); *Bonner v. Henderson*, 517 F.2d 135 (5th Cir. 1975); *Pleas v. Wainwright*, 441 F.2d 56 (5th Cir. 1970). Thus, the threshold issue for this court is whether the charge given here so infected the trial as to render it fundamentally unfair. We conclude that it did.

The effect of the charge in this case was affirmatively to shift to the defendant the burden of proof on a critical fact which was in dispute—namely, whether Tyler had a specific intent to harm more than one person. Inasmuch as there is very little evidence to support that proposition other than the presumption at issue here, it is folly to argue that the erroneous charge did not affect the central determination of guilt or innocence.

Concluding that the charge affected the fundamental fairness of the trial does not end our inquiry, however. Because Tyler's trial counsel failed to object to the erroneous instruction, we must determine whether the district court was correct in concluding that the procedural default under Louisiana's contemporaneous objection rule bars habeas relief by this court.

█ *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), admonishes us that absent cause for the procedural default and actual prejudice from the error, principles of comity and federalism prevent federal courts from granting habeas relief to state prisoners whose claim is non-reviewable in state court because of the default. This rule was designed to avoid the perceived effect of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), of encouraging "sandbagging" by defense lawyers in the state trial. 433 U.S at 89, 97 S.Ct. at 2507.

Considering first the "prejudice" prong, we find Tyler was prejudiced by the improper jury charge. As discussed above, the error was sufficiently egregious to convince us that Tyler was denied a fundamentally fair trial. *See Harris v. Spears*, 606 F.2d 639 (5th Cir. 1979); *Freeman v. Georgia*, 599 F.2d 65 (5th Cir.), *cert. denied*, 444 U.S. 1013, 100 S.Ct. 661, 62 L.Ed.2d 641 (1980); *Berrier v. Egeler*, 583 F.2d 515 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978); *Collins v. Auger*, 577 F.2d 1107 (8th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979); *Sincox v. United States*, 571 F.2d 876 (5th Cir. 1978); *Bromwell v. Williams*,

---

**6.** For a discussion of the Louisiana contemporaneous objection rule by then Justice Tate, see *State v. Wrestle, Inc.*, 360 So.2d 831 (La.1978),

*modified on other grounds sub nom. Burch v. Louisiana*, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979).

445 F.Supp. 106 (D.Md.1977). *But see Blenski v. LaFollette*, 581 F.2d 126 (7th Cir. 1978).

We must then address the second prong to ascertain whether both prejudice and cause existed so as to bring this case within the exception of *Wainwright v. Sykes.* At the habeas hearing in state court,[7] Tyler's trial attorney was asked his reasons for not objecting at trial to the charge now challenged. The following dialogue ensued:

Q: Mr. Williams, you recall during the trial when these arguments that I just indicated to you were made on the question of presumptions?

A: I don't recall during the trial when they were made. I mean, all of that looks familiar, and I'm taking your word that it's a copy from the record of the case.

Q: Certainly.

A: But I don't have an independent recollection of when during the trial and what dates and specific things about that.

Q: Do you recall the judge's charge on the question of presumptions to the jury?

A: No.

Q: I take it, then, that the fact that you had not objected either to the argument or the jury charge is not based upon any trial tactic which you were using.

A: Mr. Peebles, I don't recall whether I objected or not. And if I did not object, I really don't have an independent recollection of why or why not. I'll have to simply depend on the record.

We can hardly conclude, based upon this dialogue, that failure to object was a deliberate trial tactic, a sufficient showing under *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Neither, however, can we conclude that this demonstrated the cause required by *Sykes*.[8] Nor has Tyler's counsel before this court voiced any explanation of the failure to object.[9] Hence, the requisite showing of cause has not been made, and under the rule as set forth in

---

**7.** Finding that Tyler received a full and fair hearing in state court, the district court did not conduct an evidentiary hearing and relied upon the state record.

**8.** In *Appellant's Response to Appellee's Petition for Rehearing*, he asserts, relying upon *Henderson v. Kibbe*, 431 U.S. 145, 94 S.Ct. 396, 38 L.Ed.2d 368 (1977), that federal habeas corpus will lie even in the absence of a trial objection by defense counsel to a jury instruction if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." 431 U.S. at 154, 94 S.Ct. at 404. Assuming arguendo that *Henderson* may be read as holding that it is unnecessary to demonstrate cause for the failure to object, that case was decided before *Wainwright v. Sykes.* We are bound to follow the later holding of the Supreme Court.

**9.** We recognize that the instructions were given in accordance with the Louisiana statute on presumptions, *see* La.R.S. § 15:432, which possibly accounted for the lack of objection. *But see Dumont v. Estelle*, 513 F.2d 793 (5th Cir. 1975) (unencouraging status of the law at the time of trial does not of itself constitute cause for failure to object). At the time of trial, however, *Mullaney v. Wilbur* had already been

decided, casting great doubt upon the constitutionality of such burden-shifting presumptions. Moreover, it is not for this court to speculate as to possible reasons for the failure to object when appellant has advanced no explanation. As the Court stated in *Sykes*: "Whatever precise content may be given [the term cause] by later cases, we feel confident in holding without further elaboration that [cause does] not exist here. Respondent has advanced no explanation whatever for his failure to object at trial...." 433 U.S. at 91, 97 S.Ct. at 2508.

Tyler urges this court to follow *Berrier v. Egeler*, 583 F.2d 515 (6th Cir.), *cert. denied*, 439 U.S. 955, 99 S.Ct. 354, 58 L.Ed.2d 347 (1978), a post-*Sykes* case on all fours with this one. The Sixth Circuit found that cause for a failure to object existed because the error "went to the central issue of guilt or innocence and infected the fairness of the trial itself." The court, relying upon a pre-*Sykes* decision, *United States v. Buffa*, 527 F.2d 1164 (6th Cir. 1975), based its decision upon the plain error doctrine. We cannot agree that plain error, absent a showing of cause, is sufficient under *Sykes*. "Plain error" only goes to the prejudice prong of *Sykes*; under that case, both cause and prejudice must be shown.

*Sykes* we are precluded from granting habeas relief.[10]

### Application of Jackson v. Virginia

Tyler next contends that there is insufficient evidence to sustain his conviction for first degree murder under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although Tyler's trial was in 1975, this court has held that *Jackson* is to be applied retroactively. *Holloway v. McElroy*, 632 F.2d 605 (5th Cir. 1980).

 *Jackson* held that the "no evidence" rule of *Thompson v. Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960), is inadequate to protect a defendant from misapplications of the reasonable doubt standard constitutionally necessary for a criminal conviction, 443 U.S. at 320, 99 S.Ct. at 2790. In order to adequately protect a defendant from such a misapplication, a federal habeas court which is presented with a sufficiency of the evidence claim, must, assuming procedural prerequisites have been satisfied, grant the relief sought if on the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt. 443 U.S. at 324, 99 S.Ct. at 2792.

 Applying this test to the facts of this case, we cannot say Tyler is entitled to relief. Gary Tyler fired a .45 caliber pistol into a crowd of people. A rational fact finder could conclude that firing a pistol into a crowd of people evidences an intent to kill or do great bodily harm to more than one of those assembled. Because Tyler's *Jackson* claim goes only to the question of his intent and since a rational trier of fact could conclude he possessed that intent, Tyler cannot succeed on his *Jackson* claim.

The judgment is AFFIRMED.

COLEMAN, Circuit Judge, concurring:

The majority opinion correctly states in the last paragraph that "Gary Tyler [age 16] fired a .45 caliber pistol into a crowd of people;" that "A rational fact finder could conclude that firing a pistol into a crowd of people evidences an intent to kill or do great bodily harm to more than one of those assembled."

It is hardly to be doubted that anybody of average intelligence could disagree with such an obvious fact. That being so, and as a matter of the common sense upon which jurors generally rely, I would not say that the giving of the challenged instruction rendered Tyler's trial fundamentally unfair. Tyler was in a place of safety, in a school bus with other children. He was not under attack and could not have been in any fear of death or great bodily harm. He was old enough to know what a .45 bullet would do when fired into a crowd at close range. Yet, he wantonly fired. I believe that without the challenged instruction the verdict on intent would have been the same. The sad facts were more than enough, without relying on legalisms to establish a belief from the evidence beyond a reasonable doubt.

I agree with all else in the opinion and with the result.

This is a collateral attack and Tyler has already escaped the death penalty to which he was originally sentenced. Leaving him to serve a prison sentence for taking a young life, as he did, is not a miscarriage of justice.

10. The testimony of Tyler's counsel at the state hearing concerning the lack of objection at trial was not mentioned by the parties prior to the motion for rehearing. In the opinion now vacated this court had remanded for an evidentiary hearing on cause. In the light of this testimony, a further evidentiary hearing would be inappropriate.